[Cite as *State v. Jones*, 2015-Ohio-4116.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26289 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-1240 |
| | : | |
| JAROD JONES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45402
         Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
         Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Jarod Jones, appeals from his conviction in the Montgomery County Court of Common Pleas after a jury found him guilty of multiple counts of rape and gross sexual imposition of a minor. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On April 29, 2013, Jones was indicted on two counts of raping a minor under ten years of age and one count of raping a minor under thirteen years of age, both in violation of R.C. 2907.02(A)(1)(b). Jones was also indicted on two counts of gross sexual imposition of a minor under thirteen years of age in violation of R.C. 2907.05(A)(4). Jones pled not guilty to all the charges.

{¶ 3} The victim, K.D., is the niece of Jones's former fiancé. Between August 2011 and early 2012, Jones lived next door to K.D. and her mother in an apartment on "R." Drive in Dayton, Ohio. In November 2012, after Jones had left Dayton for a period of time and had returned in September 2012, Jones moved to K.D.'s grandmother's house on "S." Road. On occasion, Jones would babysit K.D. at his apartment on R. Drive and at the S. Road address.

{¶ 4} On April 18, 2013, K.D. disclosed to her principal and school counselor that Jones had been sexually abusing her. After the school notified K.D.'s mother of the accusations, K.D.'s mother took K.D. to the emergency room where she was referred to CARE House, Montgomery County's advocacy center for victims of child abuse. The next day, Detective Jerome Dix of the Dayton Police Department's Special Victims Unit

interviewed K.D. at CARE House. Following his interview with K.D., Detective Dix arrested Jones and interviewed him regarding the alleged sexual abuse.

{¶ 5} During the recorded interview, Jones admitted to engaging in sexual acts with K.D. at his apartment on R. Drive and at K.D.'s grandmother's house on S. Road. Specifically, Jones admitted to inappropriately touching K.D.'s bare buttocks and to K.D. touching his penis with her hand while he was aroused. Jones also admitted that K.D. had her mouth on his penis on two occasions while at her grandmother's house. Jones, however, denied engaging in vaginal intercourse with K.D. He blamed his conduct on inebriation and K.D. being aggressive and dancing provocatively. After his admissions, Jones got down on his knees and prayed for forgiveness once Detective Dix left the interview room.

{¶ 6} Approximately a week after Jones's interview with Detective Dix, on April 25, 2013, Dr. Lori Vavul-Roediger examined K.D. and found no abnormalities or injuries to K.D.'s genital or anal regions. Nevertheless, Dr. Vavul-Roediger concluded that K.D.'s exam neither confirmed nor ruled out her claims of sexual abuse.

{¶ 7} On July 17, 2013, Jones filed a motion to suppress the statements he made during the recorded interview with Detective Dix on grounds that his statements were coerced and involuntarily made. After holding a hearing on the matter, the trial court overruled Jones's motion to suppress in its entirety on September 10, 2013.

{¶ 8} The case then proceeded to a four-day jury trial. Prior to trial, however, the trial court held a *Boggs* hearing due to K.D. informing Detective Dix that she had also been sexually abused by her cousin and her mother's ex-boyfriend. At the hearing, the trial court questioned K.D. about those accusations using a questionnaire agreed to by

both parties. In response to the court's questions, K.D. testified that she had told the truth when she accused her cousin of touching her "private parts" and making her touch his "private parts." Hearing Trans. (May 21, 2014), p. 23. K.D. also testified that she had told the truth when she accused her mother's ex-boyfriend of "doing sexual things to [her]." *Id.* at 23-24.

{¶ 9} At trial, the State presented testimony from K.D., K.D.'s mother, Detective Dix, and Dr. Vavul-Roediger. Prior to Detective Dix's testimony, Jones filed a motion in limine arguing that his confession during his interview with Detective Dix was not admissible under the corpus delicti rule because there was no evidence indicating that any abuse occurred when K.D. was under the age of ten. The trial court disagreed and overruled the motion, thereby permitting the State to play Jones's recorded interview with Detective Dix. After the State rested, Jones chose not to present any testimony in his defense, but moved the trial court for acquittal under Crim.R. 29, which the court denied.

{¶ 10} After deliberation, the jury found Jones guilty of all five charges against him. The trial court then sentenced Jones to a mandatory prison term of fifteen years to life for each of the two counts of raping a minor under the age of ten. For the single count of raping a minor under the age of thirteen, Jones received a mandatory prison term of ten years. Jones also received a five year prison term for each of the two gross sexual imposition counts. The gross sexual imposition counts were ordered to run concurrently with each other, but consecutively to all other counts. The remaining counts were ordered to run consecutively for a total aggregate term of 45 years to life in prison. The trial court also designated Jones a Tier III sex offender for the rape convictions and a Tier II sex offender for the gross sexual imposition convictions.

{¶ 11} Jones now appeals from his convictions, raising twelve assignments of error for review.

**Motion to Suppress**

{¶ 12} Under his First Assignment of Error, Jones contends the trial court erred in failing to suppress statements he made during his April 19, 2013 interview with Detective Dix, claiming those statements were involuntary as a product of coercive police conduct. Specifically, Jones claims that in order to obtain his confession, Detective Dix threatened him with increased penalties, made promises of leniency, engaged in bullying, misrepresented certain facts as exonerative, misrepresented the strength of the State's case against him, and used his family, faith, and other circumstances as leverage. We disagree with Jones's claims.

{¶ 13} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence." (Citation omitted.) *Id.* " 'Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford* at 592. Whether an accused's confession was voluntary presents a question of law that we review de novo. *State v. Beckett,* 2d Dist. Clark No. 00CA0049, 2001 WL 1018224,

*2 (Sept. 7, 2001).

**{¶ 14}** "Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been followed." (Citations omitted.) *State v. Western*, 2015-Ohio-627, 29 N.E.3d 245, ¶ 12 (2d Dist.).

**{¶ 15}** "[T]he State has the burden to show by a preponderance of the evidence that a defendant's confession was voluntarily given." *Western* at ¶ 16, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978). " 'If all of the attendant circumstances indicate that the confession was coerced or compelled, it cannot be used to convict the defendant.' " *State v. Strickland*, 2d Dist. Montgomery No. 25545, 2013-Ohio-2768, ¶ 11, quoting *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 22.

**{¶ 16}** "Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues." (Citations omitted.) *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 30. Therefore, "[r]egardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion." *Id.*, citing *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 11.

**{¶ 17}** "A defendant's statements to police after a knowing, intelligent, and voluntar[y] waiver of the individual's *Miranda* rights are presumed to be voluntary."

(Citation omitted.) *Id.* at ¶ 31. However, " '[t]he *Miranda* presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess. It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession.' " *Id.*, quoting *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 14 (2d Dist.). (Other citation omitted.)

{¶ 18} "In determining whether a pretrial statement is involuntary, a court 'should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' " *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 13, quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds,* 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). For instance, " '[p]romises of leniency by the police * * * are improper and render an ensuing confession involuntary.' " *State v. Holtvogt*, 2d Dist. Montgomery No. 24748, 2012-Ohio-2233, ¶ 13, quoting *State v. Hopfer*, 112 Ohio App.3d 521, 547, 679 N.E.2d 321 (2d Dist.1996). Moreover, "if an incriminating statement is forced from the mind of the suspect by the flattery of hope or by the torture of fear, [it] must be suppressed because it was involuntary." (Citations omitted.) *Porter* at ¶ 34.

{¶ 19} On the other hand, a police officer's assurances that a defendant's cooperation will be considered, or that a confession will be helpful, do not invalidate an otherwise legal confession. *State v. Stringham*, 2d Dist. Miami No. 2002-CA-9, 2003-

Ohio-1100, ¶ 16. "[A] mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " *Id.*, quoting *State v. Farley*, 2d Dist. Miami No. 2002-CA-2, 2002-Ohio-6192, ¶ 44. (Other citation omitted.) "Likewise, an investigator's offer to 'help' if a defendant confesses is not improper." *Id.*, citing *State v. Chase*, 55 Ohio St.2d 237, 247, 378 N.E.2d 1064 (1978). (Other citation omitted.) Furthermore, "[a]dmonitions to tell the truth, coupled with a benefit that flows naturally from being truthful, are not coercive in nature." (Citation omitted.) *Porter* at ¶ *34. Accord State v. Tullis*, 2d Dist. Greene No. 2012-CA-59, 2013-Ohio-3051, ¶ 22.

**{¶ 20}** We have reviewed the transcript of the suppression hearing and the exhibits admitted at that hearing, including the video recording of Jones's interview with Detective Dix. At no point during the interview did we observe Detective Dix bully or intimidate Jones as he has alleged. In fact, contrary to Jones's claims otherwise, Detective Dix was respectful and calm towards him at all times. Moreover, Detective Dix made no threats or promises of leniency in an effort to get Jones to confess, nor did he make any misrepresentations or leverage a confession. To claim otherwise is simply a mischaracterization of the record before this court.

**{¶ 21}** For instance, during the early part of the interview, after advising Jones of the accusations against him, Detective Dix asked Jones if he would be willing to take a lie detector test, to which Jones responded that he would. After advising Jones that the polygraph could not be administered that day, Detective Dix explained to Jones that if the polygraph shows he is being untruthful, "then you're getting the whole kit and caboodle

but if there are explanations for some of the things [K.D.] is talking about then I need to know now, because after that it's too late; after that it is full-fledged rape."   State's Exhibit 1 (Apr. 19, 2013).

{¶ 22} Jones argues that Detective Dix's statement was a threat to increase his penalty if he did not confess, as well as a promise of a lesser charge if he did.   We disagree with Jones's interpretation of Detective Dix's statement.   Instead, we find the statement merely conveyed to Jones what would happen if the polygraph detected deception—namely, that Jones would be charged with the crimes alleged by K.D., which included rape, and it would be too late for any subsequent explanation of his actions to be deemed credible.   Our interpretation of this statement is supported by Detective Dix's subsequent comment:

> I'm giving you the opportunity to talk, we'll do the polygraph, but if you come back and it is not truthful, no one's going to listen to a thing you have to say to them, because it is going to go down as full-fledged rape.   If there is more to this story then this is the time to talk about it, because if not, this ten year old is coming into a court of law and she is going to tell all this straight over again, and I don't think that you want that to happen.

State's Exhibit 1.

{¶ 23} Taken in its full context, Detective Dix's statement did nothing more than encourage Jones to tell the truth prior to taking the polygraph.   This does not serve as a threat of increased penalty or a promise of leniency.   Rather, it is an accurate statement as to what would happen if the polygraph detected deception.

{¶ 24} During the polygraph discussion, Detective Dix also stated that "if [K.D.] was

okay with certain things, we can deal with that, but if it comes back as full-fledged rape then I don't have a choice. * * * [I]f there is an explanation, there's times [when other interrogees] give it to me and we'll get things worked out, but once we take [the polygraph] it's the whole kit and caboodle." State's Exhibit 1.

{¶ 25} Jones argues that this statement misrepresented K.D.'s consent as an exonorative factor. We again disagree, as the context of the statement relates to the polygraph and conveys what could happen if Jones were to explain himself before taking the polygraph. At no point during the interview did Detective Dix tell Jones that he would be treated with leniency or not be charged if K.D. had consented to the abuse. Instead, Detective Dix indicated that there have been instances where interrogees had given their side of the story and thereafter had things "worked out." However, Detective Dix made no promises to Jones in that respect.

{¶ 26} Detective Dix also stated: "If [K.D.] was making advances toward you, things happen, that is what I need to know, sometimes shit happens I get that and it's not easy to talk about." *Id.* Jones argues that this statement misrepresented the victim's alleged advances as an exonorative factor. However, as the investigating detective, it is clear that Detective Dix would want to know how the abuse was initiated. Detective Dix's statement regarding his desire to know whether K.D. made any advances in no way insinuates that Jones would be treated with leniency or not be charged if that was proven to be true.

{¶ 27} Similarly, Jones argues that Detective Dix made statements misrepresenting intoxication as an exonorative factor. To that end, Jones takes issue with Detective Dix stating: "If there are explanations, if you lost your mind for a minute,

ok we can deal with that, but what we can't deal with is calling a ten year old a liar when she has way too much information[,]" and "if you had some drinks and you are intoxicated we can understand that and work with those things, but what you are telling us now is that [K.D.] is a liar." *Id.*

**{¶ 28}** Again, we do not find that these statements rise to the level of a promise of leniency or exoneration as Jones suggests. Instead, the statements merely convey that Detective Dix was unable to help Jones if he simply calls K.D. a liar, but that help may be available if Jones told the truth and provided some explanation for his actions. As previously stated, an investigator's offer to help if the defendant confesses is not improper. *Stringham,* 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100 at ¶ 16, citing *State v. Chase*, 55 Ohio St.2d 237, 247, 378 N.E.2d 1064 (1978). (Other citation omitted.)

**{¶ 29}** As the interview continued, Jones eventually told Detective Dix that on one occasion K.D. had rubbed her hand against his genitals while he was wearing jogging pants. When Jones continued to deny any other sexual activity, Detective Dix said: "I don't think the person sitting before me is a monster. By saying the child made this up and continuing to call her a liar, then it looks like you are just purposely hurting the child and that makes you a monster." State's Exhibit 1. Jones contends this statement misled him into believing his intentions were relevant to the alleged crimes and severity of punishment. We again disagree with Jones's interpretation of Detective Dix's statement, as it serves as nothing more than an admonition to tell the truth, which is not coercive in nature. *Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149 at ¶ 34; *Tullis*, 2d Dist. Greene No. 2012-CA-59, 2013-Ohio-3051 at ¶ 22.

{¶ 30} Following these exchanges, Jones admitted to touching K.D. inappropriately on her bare buttocks while he was intoxicated. Jones also admitted to pulling out his penis and having K.D. touch it with her hand. At that point, Jones expressed concern that he was going to lose his fiancé and daughter. In response, Detective Dix said "[t]hat may not necessarily be true[,]" but then explained that if Jones did not get any help, his fiancé might not let him see his daughter again. State's Exhibit 1.

{¶ 31} Jones argues that the foregoing statement by Detective Dix was improper because it used his family ties as leverage to obtain a confession. However, contrary to Jones's claim, Detective Dix's statement was merely conveying to Jones that people who are honest and seek help for their problems are more likely to be forgiven, and that if he did not get help, it would be less likely that his fiancé would allow him to see his daughter again. Nothing about Detective Dix's statement was unlawfully coercive.

{¶ 32} Continuing, Detective Dix made a reference to celebrity golfer Tiger Woods as an example of someone who has been forgiven by society after admitting his problems and receiving treatment. Jones claims this tactic was coercive. We must again disagree. Contrary to Jones's claim, Detective Dix's reference to Tiger Woods was simply a way to help Jones understand that his relationship with his family might not be ruined if he decided to get the help he needs. Like Detective Dix's other statements, his reference to Tiger Woods was not unlawfully coercive.

{¶ 33} Next, Jones expressed concern with having to register as a sex offender. In response, Detective Dix told Jones he had no control over whether Jones would have to register. Detective Dix also explained that having to register as a sex offender may

not necessarily prevent Jones from seeing his daughter again. Jones claims Detective Dix used the registration as leverage to coerce a confession. Once again, we disagree. Detective Dix cannot predict what effect registration would have on the relationship with his daughter, and Detective Dix did not state or even imply that Jones would not have to register if he made a confession.

{¶ 34} After discussing the registration requirement, Jones eventually admitted to putting his penis in K.D.'s mouth on two occasions, but denied engaging in any vaginal intercourse with her. Following his confession, Detective Dix began to speak to Jones in religious terms, advising him that God forgives those who confess their sins, and again asked if Jones was telling the entire truth. Detective Dix also said: "You can sit here and lie to me if you want, but the man upstairs is watching." State's Exhibit 1. Jones claims Detective Dix used his faith as leverage to coerce a confession. Jones, however, made no additional confessions after Detective Dix began this line of questioning; therefore, it cannot serve as a basis for finding his confession involuntary.

{¶ 35} For the foregoing reasons, the totality of the circumstances establishes that Detective Dix's questioning of Jones was not unlawfully coercive. The recorded interview establishes that Jones, a 27-year-old with a partial college education, understood the questions Detective Dix asked, as well as the gravity of the situation that he faced. Jones was interrogated on one occasion for approximately two and one half hours, during which time Jones was not subject to any physical deprivation or mistreatment. In addition, at no point in time did the recording show Jones's free will being overborne by the circumstances surrounding his confession. Instead, Jones was treated respectfully during the entire interview and never once requested to stop the

interview. His entire conversation with Detective Dix was voluntary and, as previously discussed, his confession was not the result of any threats or inducement. Accordingly, we conclude the trial court did not err in overruling Jones's motion to suppress the statements he made to Detective Dix during his interview.

**{¶ 36}** Jones's First Assignment of Error is overruled.

### Manifest Weight and Sufficiency of the Evidence

**{¶ 37}** Under his Second and Third Assignments of Error, Jones challenges the legal sufficiency and manifest weight of the evidence for each of his rape and gross sexual imposition convictions.

**{¶ 38}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

**{¶ 39}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence

is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 40} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted*.) State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 41} " 'Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a

finding of sufficiency.' " *State v. Perry*, 2d Dist. Montgomery No. 26421, 2015-Ohio-2181, ¶ 24, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. "As a result, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 42} As noted earlier, Jones was convicted of two counts of raping a minor less than ten years of age and one count of raping a minor less than thirteen years of age, all in violation of R.C. 2907.02(A)(1)(b). In order to prove rape under R.C. 2907.02(A(1)(b), the State must prove the offender engaged in sexual conduct with a person less than thirteen years of age, whether or not the offender knew the age of the other person. " 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another[.]" R.C. 2907.01(A). " 'Fellatio is committed by touching the male sex organ with any part of the mouth.' " *State v. Hudson*, 2d Dist. Montgomery No. 22793, 2009-Ohio-2776, ¶ 42, citing *State v. Long*, 64 Ohio App.3d 615, 618, 582 N.E.2d 626 (9th Dist. 1989).

{¶ 43} Jones was also convicted of two counts of gross sexual imposition with a minor less than thirteen years of age in violation of R.C. 2907.05(A)(4). In order to prove the offense of gross sexual imposition proscribed by that statute, "the State must prove that the defendant had sexual contact with a person, not the defendant's spouse, and that the contact was with a person under the age of thirteen, whether the defendant knew the age of the person or not." *State v. Israel*, 2d Dist. Miami No. 09-CA-47, 2010-Ohio-5044,

¶ 25. The term "sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). " '[T]here is no requirement that there be direct testimony regarding sexual arousal or gratification.' " *State v. Clark*, 2d Dist. Clark No. 2013 CA 52, 2014-Ohio-855, ¶ 12, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. The trier of fact may infer from the evidence presented at trial whether the purpose of the touching was for the defendant's sexual arousal or gratification. *Id.*

{¶ 44} As for the two counts of rape of a minor less than ten years of age, Jones contends there is no evidence or testimony indicating that he engaged in sexual conduct with K.D. when she was under the age of ten. We disagree.

{¶ 45} K.D. testified that while she was alone with Jones in his apartment on R. Drive, Jones made her pull down her pants, inserted his penis in her vagina, and started pushing. K.D.'s mother testified that as of August 2011, she and K.D. lived next door to Jones and K.D.'s aunt on R. Drive, and that during that time, Jones would sometimes babysit K.D. at his apartment. According to K.D.'s mother, Jones left the R. Drive apartment for Pittsburgh, Pennsylvania, in May 2012, and did not return to Dayton until September 2012. K.D.'s mother also testified that when Jones returned to Dayton, he lived with her and K.D. until November 2012, before moving in with K.D.'s grandmother on S. Road.

{¶ 46} Jones echoed a majority of this information during his recorded interview, although he indicated that he was in Pittsburgh from February 20, 2012 until August 30,

2012. *See* State's Exhibit 1. It is undisputed that K.D. turned nine years old in early August, 2011. As a result, during the time that Jones lived next door to K.D. at his apartment on R. Drive, i.e., between August 2011 and either February or May 2012, K.D. would have been nine years old. Accordingly, the abuse K.D. testified to at Jones's R. Drive apartment would have occurred when she was under the age of ten.

{¶ 47} K.D. also testified that prior to the R. Drive incident, Jones inserted his penis into her vagina at her grandmother's house on S. Road. Accordingly, K.D. would have been nine years old at the time of that incident as well. Furthermore, during his recorded interview, Jones admitted to having K.D.'s mouth on his penis on two occasions at her grandmother's house and stated that those incidents happened before he left for Pittsburgh in February 2012. *See* State's Exhibit 1. While not giving specific dates, K.D. also testified that Jones had put his penis in her mouth while at her grandmother's house on S. Road. The two acts of fellatio Jones confessed to would have occurred when K.D. was nine years old given that he claimed they occurred prior to February 20, 2012.

{¶ 48} Based on the testimony of K.D. and her mother, or alternatively, on Jones's confession itself, there was sufficient evidence for the jury to find that on at least two occasions Jones engaged in sexual conduct with K.D. while she was under the age of ten. In addition, Jones's convictions for two counts of rape of a minor under the age of ten were not against the manifest weight of the evidence, as the jury did not lose its way simply because it found the testimony of K.D and her mother, and/or Jones's confession credible.

{¶ 49} Jones next contends there is no reliable evidence in the record to support

his conviction for the single count of raping a minor under thirteen years of age or the two counts of gross sexual imposition of a minor under thirteen years of age. We again disagree.

{¶ 50} As for the gross sexual imposition counts, K.D. testified that while at her grandmother's house on S. Road, Jones touched her vagina with his hand under her clothes and also made her hand touch his penis using what she described as a pushing motion. Both of these acts qualify as "sexual contact" under R.C. 2907.01(B), as a juror can infer from K.D.'s testimony that the purpose of the touching was for Jones's sexual arousal or gratification. While K.D. did not provide specific dates when these acts occurred, K.D.'s mother testified that Jones babysat K.D. at the S. Road address both before and after his return to Dayton in September 2012, a period in which K.D. would have been either nine or ten years old. It should also be noted that during his recorded interview, Jones confessed that he inappropriately touched K.D.'s bare buttocks and that K.D.'s hand touched his penis while he was aroused at his apartment on R. Drive prior to February 20, 2012.

{¶ 51} As for the count of rape of a minor under thirteen years of age, K.D. testified that while she and Jones were alone at her grandmother's house he inserted his penis into her vagina approximately 10 to 20 times during the time period between September 2012 and December 2012, during which she would have been ten years old. K.D.'s mother also testified that during late 2012 and into 2013 she observed skin tears on K.D.'s labia on more than two occasions after K.D. had complained of pain while urinating. When K.D. was later examined by Dr. Vavul-Roediger, K.D. reported that she previously had "cuts" on her genital area and attributed those cuts to the sexual abuse by Jones.

{¶ 52} While K.D. could not remember specific dates and portions of her testimony contained some inconsistencies with respect to the timing of events, the State presented testimony from Detective Dix explaining that based on his experience, children in K.D.'s age range have difficulty with "faceting events with actual time" and it is common for someone K.D's age to blend events together when so many events have occurred. Trial Trans. Vol. II (May 28, 2014), p. 269-271. Detective Dix also testified that it is common for children to delay disclosing the abuse in the manner K.D. did here. Additionally, K.D. was able to testify to specific details, including the specific sexual conduct, what room she was in, the time of day it happened, what she was wearing, how she was positioned, and what happened afterwards. The fact that K.D. was able to testify to these very specific details lends to her credibility.

{¶ 53} In light of the foregoing, we find the testimony and evidence presented by the State provides sufficient evidence demonstrating that Jones had sexual contact with K.D. on at least two occasions when she was under the age of thirteen. It also demonstrates that Jones engaged in sexual conduct with K.D. when she was under the age of thirteen, with at least two of the three instances occurring when she was under the age of ten. It was for the jury to determine the credibility of the testimony, and in this case, it is not patently apparent that the jury lost its way. Therefore, based on the evidence before this court, we find the jury did not create a manifest miscarriage of justice in finding Jones guilty of three counts of rape and two counts of gross sexual imposition. Accordingly, Jones's convictions for those offenses were supported by sufficient evidence and were not otherwise against the manifest weight of the evidence.

{¶ 54} Jones's Second and Third Assignments of Error are overruled.

**Ineffective Assistance of Counsel**

**{¶ 55}** Jones raises five separate assignments of error alleging claims of ineffective assistance of trial counsel. To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. (Citation omitted.) *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

I.

**{¶ 56}** Under his Fourth Assignment of Error, Jones contends his trial counsel was ineffective in failing to elicit testimony at the *Boggs* hearing and jury trial illustrating the similarities between the sexual abuse K.D. accused him of committing and the prior sexual abuse K.D. accused her cousin and mother's ex-boyfriend of committing. We note that during cross-examination at trial, K.D. acknowledged that she had been sexually abused by her mother's ex-boyfriend, but Jones's counsel did not continue to question

her on this topic, presumably due to the *Boggs* ruling. Despite Ohio's rape shield law, which excludes evidence of a victim's prior sexual activity with others, Jones claims that his trial counsel should have further developed K.D.'s testimony on that topic. Specifically, Jones claims that additional testimony regarding the details of K.D.'s prior abuse would have been admissible in this case to explain why K.D. is conversant in matters of sex. Jones also claims that additional testimony on that topic would have allowed him to demonstrate that K.D. may have potentially "blended" her abusers and mistaken Jones for her cousin or her mother's ex-boyfriend. According to Jones, excluding further testimony on K.D.'s prior sexual abuse by others would have unconstitutionally infringed on his right to present evidence essential to his defense as guaranteed by the Confrontation Clause and Compulsory Process Clause. We disagree.

{¶ 57} Ohio's rape shield law is set forth in R.C. 2907.02(D), which states the following:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶ 58} The statute essentially prohibits the introduction of any extrinsic evidence

pertaining to the victim's sexual activity unless it involves evidence of the origin of semen, pregnancy, or disease, or of the victim's past sexual activity with the offender. *State v. Williams*, 21 Ohio St.3d 33, 34, 487 N.E.2d 560 (1986). However, "a defendant may cross-examine a rape victim about a prior false accusation of rape, under Evid.R. 608(B), *if* the accusation does not involve any 'sexual activity,' evidence of which is prohibited by the rape-shield provision[.]" (Emphasis sic.) *State v. Hall*, 2d Dist. Montgomery No. 25794, 2014-Ohio-2094, ¶ 12, citing *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), paragraph two of the syllabus. (Other citation omitted.) For cross-examination to be allowed, the trial court must be satisfied that the prior allegations were actually false and that no sexual activity took place. *Boggs* at 423. An in camera hearing must be held to determine this issue. *Id.* at 421. If it is discovered that sexual activity did occur, whether consensual or not, inquiry on cross-examination would be prohibited by Ohio's rape shield law. *Id.* at 423.

**{¶ 59}** "Application of the rape shield law may not, however, unduly infringe upon a defendant's constitutional rights." *In re Michael*, 119 Ohio App.3d 112, 118, 694 N.E.2d 538 (2d Dist.1997). In determining whether the law would unconstitutionally infringe on a defendant's rights, "the trial court must balance the interests of the law against the probative value of the evidence excluded by the trial court." *State v. Hennis*, 2d Dist. Clark No. 2003 CA 21, 2005-Ohio-51, ¶ 48, citing *State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979). "In order for the contested evidence to be admitted, its probative value must be more important than merely to attack the credibility of a witness." *Id.*, citing *Gardner* at 17. (Other citation omitted.)

**{¶ 60}** In *Michael*, the defendant, who denied any wrongdoing, appealed from his

convictions for rape, attempted rape, and gross sexual imposition of a minor. *Michael* at 118. The defendant argued, in part, that the trial court erred in applying the rape shield law to exclude evidence of the minor's prior sexual abuse by another. *Id.* at 119. At trial, the State presented an expert witness who testified that the minor's conversance in matters of sex was an indicator of sexual abuse. *Id.* at 117. Therefore, on appeal, the defendant argued that excluding evidence of the minor's prior abuse prevented him from showing an alternative source of the minor's sexual knowledge. *Id.* at 119. In response, this court found it probative that the minor had previously been victimized in a similar manner by another because the victim was such a young age that his sexual knowledge was inappropriate. *Id.* at 120-121. Accordingly, we held it was proper for the jury to know the victim had previously been sexually abused. *Id.*

{¶ 61} In so holding, this court distinguished the Twelfth District Court of Appeals' decision in *State v. Guthrie*, 86 Ohio App.3d 465, 621 N.E.2d 551 (12th Dist.1993), wherein that court affirmed a defendant's conviction for multiple counts of rape, gross sexual imposition, and felonious sexual penetration of three minors. At trial, the defendant in *Guthrie* sought to introduce evidence of prior sexual abuse inflicted on the minors for the sole purpose of establishing an alternative explanation for their sexual knowledge. *Id.* at 468. Like *Michael*, the trial court in *Guthrie* refused to allow such evidence on the basis of Ohio's rape shield law. *Id.* at 467.

{¶ 62} However, on appeal, the Twelfth District upheld the trial court's exclusion of the evidence because the court found the prior sexual abuse was not material to a fact at issue given that the defendant did not offer that evidence for the purpose of determining whether the victim's allegations were false. *Id.* at 468. In fact, the defendant had

admitted to several of the minor's abuse claims. *Id.* at 466. We found *Michael* distinguishable because, unlike the defendant in *Guthrie*, the defendant in *Michael* had categorically denied the sexual abuse allegations. *Michael* at 121.

**{¶ 63}** Similarly, in *Hennis,* 2d Dist. Clark No. 2003 CA 21, 2005-Ohio-51*,* the defendant argued the trial court erred by prohibiting him from eliciting evidence of prior sexual abuse by the victim's uncle before the victim began living with him, claiming this evidence was highly probative and its exclusion violated his constitutional rights. *Id.* at ¶ 50. We distinguished *Hennis* from our holding in *Michael*, in part, because the defendant had admitted to engaging in sexual activities with the victim. *Id.* at ¶ 51. Thus, in following *Guthrie*, we found the victim's past sexual abuse by her uncle had little probative value and did not overcome application of the rape shield law. *Id.*

**{¶ 64}** In the instant case, the trial court held a *Boggs* hearing to determine whether K.D's prior accusations of sexual abuse by her cousin and mother's ex-boyfriend were false and whether cross-examination on that subject would be allowed at trial. At the hearing, K.D. testified that her accusations were truthful, and that sexual activity was involved; therefore, any further inquiry on the prior abuse was prohibited by Ohio's rape shield law. *See Boggs*, 63 Ohio St.3d at 421-423, 588 N.E.2d 813. Despite this, Jones's trial counsel was able to get the prior abuse on the record at trial and also referred to it during closing argument without an objection from the State or admonishment from the trial court. Regardless of that feat, Jones claims that under the authority of *Michael*, 119 Ohio App.3d 112, 694 N.E.2d 538, his trial counsel should have continued to question K.D. about the details of her prior sexual abuse, claiming that such information was highly probative because it would allow him to establish an alternative explanation for K.D.'s

conversance in matters of sex and demonstrate that she potentially mistook him for one of her other abusers.

{¶ 65} Jones's reliance on *Michael* is misplaced, as the facts are distinguishable from this case. Contrary to Jones's claim otherwise, neither the State's expert witness, Dr. Vavul-Roediger, nor Detective Dix, testified that K.D. was conversant in matters of sex or that conversance in matters of sex was an indicator of sexual abuse. During Jones's recorded interview, which was played for the jury, Detective Dix agreed with Jones that K.D. knows too much about sexual matters for a ten-year-old girl, but at no point was this fact testified to at trial as being an indicator of sexual abuse as it was in *Michael*.

{¶ 66} Furthermore, during Jones's interview with Detective Dix, Jones admitted to engaging in some of the sexual abuse alleged by K.D.; i.e., that he inappropriately touched her and put his penis in her mouth. Since Jones admitted to some of the abuse, the fact that K.D. may have been conversant in sexual matters because of prior abuse is not probative of innocence as it was for the defendant in *Michael*, who admitted to nothing. Rather, evidence of the prior abuse merely served as a means to attack K.D.'s credibility, which is insufficient to overcome the rape shield law. Therefore, any further testimony concerning K.D.'s prior sexual abuse would not have been admissible even if Jones's trial counsel had attempted to place it on the record. Accordingly, Jones's trial counsel did not provide deficient representation by failing to develop that line of questioning.

{¶ 67} For the foregoing reasons, the ineffective assistance claim raised in Jones's Fourth Assignment of Error is overruled.

II.

{¶ 68} Under his Fifth Assignment of Error, Jones contends his trial counsel was ineffective in failing to object to Detective Dix referencing K.D. as "the victim" at trial.   In making this reference, Jones argues that Detective Dix was attempting to decide an issue of fact for the jury to decide, which he claims prejudiced him.   We note that Detective Dix referenced K.D. as "the victim" three times during his testimony.   Nevertheless, after a thorough review of the record, we find Jones cannot demonstrate that his trial counsel's failure to object to those references was nothing more than a strategic decision not to call more attention to that characterization.   *See, e.g., State v. Buchanan*, 3d Dist. Union No. 14-91-14, 1992 WL 29247, *3 (Feb. 14, 1992) (finding that defense counsel's failure to object to the prosecutor referencing the two witnesses as "victims" is "merely indicative of a trial tactic, i.e., a disinclination to draw the jury's attention to the comments").   As previously noted, decisions involving trial strategy cannot form the basis of an ineffective assistance claim.   *Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860 at ¶ 58. Furthermore, Jones has not demonstrated that the outcome of his trial would have been any different had his trial counsel objected to the references.

{¶ 69} For the foregoing reasons, the ineffective assistance claim raised in Jones's Fifth Assignment of Error is overruled.

III.

{¶ 70} Under his Ninth Assignment of Error, Jones contends his trial counsel was ineffective in failing to object to testimony of the State's expert witness, Dr. Vavul-Roediger, on both hearsay and Confrontation Clause grounds.   As it relates to his hearsay argument, Jones claims that Dr. Vavul-Roediger's testimony as to what K.D. told her during her medical examination was inadmissible hearsay because it does not meet

the requirements for admission under Evid.R. 807, a rule that provides hearsay exceptions for child statements in abuse cases. The State, however, claims that Dr. Vavul-Roediger's testimony was admissible under Evid.R. 803(4) for purposes of medical diagnosis and treatment. We agree with the State.

{¶ 71} Evid.R. 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Such statements are deemed to be trustworthy and admissible because " 'the effectiveness of the treatment depends upon the accuracy of information given to the physician [so] the declarant is motivated to tell the truth.' " *State v. Hazel*, 2d Dist. Clark No. 2011 CA 16, 2012-Ohio-835, ¶ 45, quoting *State v. Brewer*, 6th Dist. Erie No. E-01-053, 2003-Ohio-3423, ¶ 28, citing *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

{¶ 72} Although *In re Coy*, 67 Ohio St.3d 215, 219, 616 N.E.2d 1105 (1993) held that Evid.R. 807 should be used by trial courts in determining the admissibility of out-of-court statements of a child under the age of twelve concerning child abuse, in *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, the Supreme Court of Ohio distinguished *Coy's* holding from cases in which the hearsay statements are made to medical personnel for purposes of medical diagnosis and treatment. *Muttart* at ¶ 46, fn. 5. *Muttart* advises that the trial court retains its discretion to determine which hearsay exception, if any, is most appropriate to admit the evidence. *Id.*, citing *State v. Dever*, 64 Ohio St.3d 401, 414, 596 N.E.2d 436 (1992).

{¶ 73} Whether the purpose of a child's statements is for medical diagnosis or treatment will depend on the facts of the particular case. *Id.* at ¶ 49. "At a minimum * * * a nonexhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner, * * * (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a 'bitter custody battle,' * * * and (3) whether the child understood the need to tell the physician the truth[.]" *Id.* "In addition, the court may be guided by the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of her declarations." (Citation and footnote omitted.) *Id.* The court should also "be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse." (Citation omitted.) *Id.*

{¶ 74} Under circumstances very similar to the instant case, we have held that a physician's testimony regarding statements made by a child abuse victim during the physician's examination of the victim was admissible under Evid.R. 803(4) even when the physician is aware of the criminal investigation and is looking for signs of sexual abuse. *State v. Jennings*, 2d Dist. Clark No. 2002 CA 78, 2003-Ohio-4429, ¶ 17-18. Specifically, we stated in *Jennings*:

> The state contends that the exam was performed for the purposes of providing medical treatment and care to the victim. Jennings asserts that the exam was performed for the purpose of collecting evidence. Actually, Dr. Duffee testified that the exam had been conducted for both purposes. The victim was referred to the Rocking Horse Center very shortly after the

allegations, even though she was not brought in for five months, and she was referred so that she could receive medical treatment and care. Furthermore, the purpose of the exam was to provide the victim with medical treatment and care. However, Dr. Duffee also testified that he had been aware of the investigation and had been looking for any evidence of sexual abuse or rape. He testified that it was mandatory for him to report any sexual abuse of a child; therefore, he would always be looking for any such evidence.

We believe that the evidence demonstrates that Dr. Duffee conducted the medical exam of the victim for the primary purpose of providing medical treatment, even though he was aware that he might be called to provide evidence in a criminal case. *This is certainly always the case when a doctor is examining a child in a case where there has been an allegation of sexual abuse.* Furthermore, the hearsay exception focuses on the perception of the declarant in making her statements. Although there is no evidence in the record regarding the victim's perception of the exam, we believe that it is reasonable to conclude that a ten-year-old girl being examined by a doctor in a pediatrician's office assumes that she is there for the purposes of medical treatment. Accordingly, we conclude that the trial court did not err in admitting the testimony of Dr. Duffee.

(Emphasis added.)  *Jennings* at ¶ 17-18.

**{¶ 75}** In the present case, the record indicates that Dr. Vavul-Roediger met with K.D. and her mother at the Children's Hospital's CARE Clinic after K.D.'s forensic

interview with Detective Dix. Dr. Vavul-Roediger testified that during their meeting, she obtained information from K.D. and her mother about K.D.'s prior medical history, academic performance, behavior, development, and emotional state, and also physically examined K.D. She further testified that the reason she spoke with K.D. and her mother prior to the physical exam was:

> [I]n essence the same reason that a physician would talk with any pediatric patient and his or her care provider at the outset of a medical appointment is to gain history about the reason for the presentation to the doctor's office, to understand symptoms, the child and or family member's concern, for the reason for the doctor's office visit, to better elicit any potential symptoms or ancillary concerns that may be present, and to formulate a diagnosis. * * * The purpose for me talking with this child and patient is absolutely for medical diagnostic purposes, to render my medical opinion, and to assess what tests and treatment needed to be done for this child.

Trial Trans. Vol. II (May 28, 2014), pgs. 289-290.

{¶ 76} When asked on cross-examination whether her physical exam of K.D. was limited to finding signs of trauma indicative of sexual abuse, Dr. Vavul-Roediger responded:

> Not necessarily, sir. I'm looking at the child cumulatively for his or her total physical health and wellbeing. It's not simply to assess signs for trauma or potential abusive injury. I'm making a full physical assessment of a pediatric patient who presents before me to look for any potential

medical concerns whatsoever. There are multiple other diagnostic findings and diagnosis I often render that have nothing to do with concerns of abuse or neglect that are often noted in my course of medical practice.

*Id.* at 316-317.

**{¶ 77}** Dr. Vavul-Roediger also testified that K.D.'s statements regarding sexual abuse were in response to her asking K.D. if anything had been hurting on her body in the past. To this, Dr. Vavul-Roediger testified that K.D. responded affirmatively to the question and explained that she previously had two cuts on her "privates" caused by Jones. Dr. Vavul-Roediger also testified that K.D. shared some of her emotional symptoms as well, in that she was having intrusive thoughts about Jones and what he had done to her.

**{¶ 78}** Based on the foregoing testimony, we conclude that Dr. Vavul-Roediger's examination of K.D. was for the primary purpose of providing medical diagnosis and treatment. Furthermore, because Dr. Vavul-Roediger described the CARE Clinic as "an outpatient setting as you might think of sort of as a doctor's office type setting[,]" we believe it is reasonable to conclude that K.D. assumed she was being examined for purposes of medical treatment and understood the need to tell the truth. *See Jennings*, 2d Dist. Clark No. 2002 CA 78, 2003-Ohio-4429 at ¶ 18 ("it is reasonable to conclude that a ten-year-old girl being examined by a doctor in a pediatrician's office assumes that she is there for the purposes of medical treatment"). As a result, we conclude K.D.'s statements to Dr. Vavul-Roediger were sufficiently trustworthy and admissible as statements for purposes of medical diagnosis and treatment. Therefore, it was appropriate for Jones's trial counsel to abstain from objecting to Dr. Vavul-Rodiger's

testimony on hearsay grounds, as her testimony falls squarely within the medical diagnosis and treatment hearsay exception in Evid.R. 803(4).

{¶ 79} Next, with respect to his Confrontation Clause argument, Jones contends K.D.'s statements to Dr. Vavul-Roediger were testimonial in nature and the doctor's testimony repeating those statements "sidestepped" his ability to confront K.D. on the witness stand.   We again disagree with Jones.

{¶ 80} "The Confrontation Clause of the Sixth Amendment to the United States Constitution gives the accused the right to be confronted with the witnesses against him." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 83.   "The United States Supreme Court has held that the right to confrontation is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendants having had the opportunity to cross-examine the declarant.*"   State v. Syx*, 190 Ohio App.3d 845, 2010-Ohio-5880, 944 N.E.2d 722, ¶ 23 (2d Dist.), citing *Crawford v. Washington*, 541 U .S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶ 81} "Statements made for medical diagnosis and treatment are nontestimonial." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 41, citing *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944 at ¶ 63.   Furthermore, "[a] defendant cannot claim that he was denied the right to confront his accuser when he has had the opportunity to cross-examine his accuser at trial."   *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 20, citing *State v. Wickline*, 50 Ohio St.3d 114, 118, 552 N.E.2d 913 (1990).

{¶ 82} In this case, we have already determined that K.D.'s statements to Dr. Vavul-Roediger were for the primary purpose of medical diagnosis and treatment, thus

K.D.'s statements are nontestimonial in nature. Additionally, K.D. testified at trial and was cross-examined by Jones's trial counsel. For these reasons, Jones's right of confrontation was not violated by Dr. Vavul-Roediger's testimony. Accordingly, Jones's trial counsel had no basis to object on such grounds and did not render deficient performance in failing to do so.

{¶ 83} For the foregoing reasons, the ineffective assistance claim raised in Jones's Ninth Assignment of Error is overruled.

IV.

{¶ 84} Under his Tenth Assignment of Error, Jones contends his trial counsel was ineffective in allowing the jury to see a portion of the recorded interview with Detective Dix that showed him down on his knees praying for forgiveness following his confession. Jones implies that this portion of the video is unfairly prejudicial and claims that his counsel should have objected to its admissibility. Once again, we disagree.

{¶ 85} Evid.R. 402 provides that "[a]ll relevant evidence is admissible * * * [and that] [e]vidence which is not relevant is not admissible." The term "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. "[T]he failure to object to admissible evidence does not establish ineffective assistance of counsel." *State v. Carson*, 2012-Ohio-4501, 978 N.E.2d 621, ¶ 28 (10th Dist.), citing *State v. Tyler*, 10th Dist. Franklin No. 05AP-989, 2006-Ohio-6896, ¶ 40.

{¶ 86} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or

of misleading the jury." Evid. R. 403(A). "This rule 'manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission.' " *In re S.A.*, 2d Dist. Montgomery Nos. 25994, 26001, 2014-Ohio-3063, ¶ 35, quoting *State v. White*, 4th Dist. Scioto No. 03CA2926, 2004-Ohio-6005, ¶ 50. Thus, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 20, citing *State v. Frazier*, 73 Ohio St.3d 323, 333, 652 N.E.2d 1000 (1995). (Other citation omitted.)

{¶ 87} In this case, the portion of the video that showed Jones on the floor of the interview room praying for forgiveness after he confessed to engaging in sexual activity with K.D. is highly probative of his guilt because it tended to substantiate the legitimacy of his confession. Otherwise, there would have been no reason for Jones to ask for forgiveness. Moreover, any prejudicial effect from that portion of the video does not substantially outweigh its probative value in substantiating the confession. As this court has stated previously, "video tape is an effective form of evidence which, if unfavorable, may very properly have a determinative effect on the factual issues. Effectiveness, however, is not prejudice." *State v. Guehl*, 2d Dist. Montgomery No. 8218, 1983 WL 2523, *1 (Oct. 26, 1983).

{¶ 88} Therefore, Jones's trial counsel did not render deficient performance in failing to object to that portion of the video, as it was relevant, admissible, and not

outweighed by the danger of undue prejudice. Additionally, Jones cannot demonstrate that the outcome of his trial would have been any different had the trial court granted such an objection and redacted that portion of the video, as there was plenty of other evidence supporting the jury's guilty verdict.

{¶ 89} For the foregoing reasons, the ineffective assistance claim raised in Jones's Tenth Assignment of Error is overruled.

V.

{¶ 90} Under his Eleventh Assignment of Error, Jones contends his trial counsel was ineffective in failing to move for a mistrial on grounds that Dr. Vavul-Roediger improperly testified regarding her opinion as to the veracity of K.D.'s statements. The Supreme Court of Ohio prohibited this kind of testimony in *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), which held that "an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus. The court explained that such testimony " 'infringed upon the role of the fact finder who is charged with making determinations of veracity and credibility.' " *Id.* At 128-129, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

{¶ 91} Following *Boston*, however, we have held that "only direct comments on credibility are forbidden." *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 42, fn. 1. Specifically, in *Rosas* we explained that:

> There is a distinction "between expert testimony that a child witness is telling the truth," on the one hand, and on the other hand, "evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." [*State v. Stowers*, 81 Ohio St.3d 260,

262, 690 N.E.2d 881 (1998)]. Expert testimony is admissible as to the latter. This is evidence that provides "additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the child's veracity." *Id.* Such testimony "does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination." [*Id.* at 263].

(Emphasis sic. Footnote omitted.) *Rosas* at ¶ 42.

**{¶ 92}** In *Rosas*, an expert child psychologist testified about the behavioral characteristics of sexually abused children. The expert then compared those characteristics to the victim's behavior and offered her opinion that the victim had been sexually abused. *Id.* at ¶ 43. Nevertheless, because the expert in *Rosas* never directly testified that she believed what the victim had said was true or that she thought the victim was a credible witness, we held that the expert's testimony was proper. *Id.* at ¶ 42-43. Under a similar set of facts, the same conclusion was reached in *State v. Cashin,* 10th Dist. Franklin No. 09AP-367, 2009-Ohio-6419, wherein the Tenth District Court of Appeals held that "indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston.*" *Id.* at ¶ 20.

**{¶ 93}** In this case, Dr. Vavul-Roediger never directly testified regarding her opinion as to the veracity of K.D.'s statements. Jones, however, argues that Dr.Vavul-Roediger effectively conveyed to the jury that she believed K.D. was telling the truth and bolstered K.D.'s credibility when she provided the following testimony during cross-examination:

If I look in absolute isolation only at this child's genital exam, she has

a normal exam which does not rule out or confirm sexual abuse. If you look at the totality of the medical information, there's a far different medical opinion.

Trial Trans. Vol. II (May 28, 2014), p. 312.

**{¶ 94}** Jones also points to the following exchange during redirect:

State: Doctor, just to be clear, you've been through every part of your report, the exam of [K.D.] was normal.

Doctor: Correct.

State: And based on those findings even with what Defense Counsel asked you whether there was penetration a certain amount of times you cannot say based on the physical findings alone whether, either rule out or confirm there was sexual abuse in this case.

Doctor: Are you asking me solely based on this child's genital and anal exam[?]

State: Yes.

Doctor: Solely based on her genital and anal exams I cannot confirm or refute that there was penetration to this child. However---

State: That's all I was asking. Hold on. You get into things that may not be admissible.

Id. at 317-318.

**{¶ 95}** In support of his claim that the foregoing testimony improperly conveyed that Dr. Vavul-Roediger believed K.D. was telling the truth, Jones cites to *State v. Knight*,

8th Dist. Cuyahoga No. 87737, 2006-Ohio-6437 and *State v. Burrell*, 89 Ohio App.3d 737, 627 N.E.2d 605 (9th Dist.1993). In those cases, the expert physicians testified that the physical examinations they conducted neither confirmed nor refuted the occurrence of sexual abuse, but nevertheless opined that the child victims were sexually abused based solely on the statements and information they received from the victim. *Knight* at ¶ 31; *Burrell* at 745. The Eighth and Ninth District Courts of Appeals in *Knight* and *Burrell* held that an expert's opinions that rely solely on a child's statements are tantamount to permitting the expert to testify as to the child's veracity. *Knight* at ¶ 32; *Burrell* at 745-746. Accordingly, the expert testimony in *Knight* and *Burrell* was found to be improper under *Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220.

{¶ 96} The facts in *Knight* and *Burrell* are distinguishable from the present case. As noted above, unlike the experts in *Knight* and *Burrell,* Dr. Vavul-Roediger never gave an opinion as to whether K.D. was sexually abused. Rather, Dr. Vavul-Roediger merely testified that the results of K.D.'s exam were normal and that the results neither confirmed nor refuted the existence of sexual abuse. While Dr. Vavul-Roediger stated that her medical opinion would be different if she were to base it on the totality of the medical information and not just the exam, she never stated what that opinion was.

{¶ 97} Because Dr. Vavul-Roediger never gave an opinion as to whether K.D. was abused, it cannot be said that her testimony indirectly touched upon K.D.'s veracity like the experts' testimony did in *Knight* and *Burrell*. However, even if she had indirectly bolstered K.D.'s credibility through her testimony, unlike *Knight* and *Burrell*, this court has held that only expert testimony directly commenting on the child's veracity is improper, and that testimony indirectly bolstering a child's credibility is permissible. *Rosas*, 2d Dist.

Montgomery No. 2242, 2009-Ohio-1404, ¶ 42 and fn. 1. The fact that Dr. Vavul-Roediger did not directly testify to whether she believed K.D. was telling the truth is dispositive of this issue and renders her testimony permissible. Therefore, Jones's trial counsel did not render deficient performance in failing to move for a mistrial based on Dr. Vavul-Roediger's testimony.

{¶ 98} For the foregoing reasons, the ineffective assistance of counsel claim raised in Jones's Eleventh Assignment of Error is overruled.

**Motion in Limine**

{¶ 99} Under his Sixth Assignment of Error, Jones contends the trial court erred in overruling his motion in limine that requested the court to prohibit the State from using his recorded confession at trial. Specifically, Jones claims that the State failed to establish the corpus delicti of the charged offenses. We disagree.

{¶ 100} We have previously discussed the corpus delicti rule in *State v. Blevins,* 2d Dist. Montgomery No. 24006, 2011-Ohio-381, wherein we stated that:

> The corpus delicti of an offense consists of the act and the criminal agency of the act. * * * Before a confession of a crime may be admitted at trial, the State must introduce evidence independent of the confession to establish the corpus delicti. * * * The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone." * * * Accordingly, "this rule does not require evidence, other than the confession, showing that the accused committed the crime but, rather, requires some evidence that

a crime was, in fact, committed." * * *.

The evidence necessary to satisfy the corpus delicti rule is not the same as is required to defeat a Crim.R. 29 motion. "The evidence presented need not be so strong that it is capable of persuading a factfinder on some element of the crime beyond a reasonable doubt." * * * Nor must the evidence be "even enough to make it a prima facie case." * * * Rather, the evidence is sufficient to satisfy the corpus delicti rule "if there is some evidence outside of the confession that tends to prove some material element of the crime charged." * * * The evidence need not relate to all elements of the crime, * * * and the State may rely on circumstantial, rather than direct, evidence[.] * * * In short, the corpus delicti rule is satisfied by "a rather low" evidentiary standard, * * * and the Supreme Court of Ohio has indicated that rule need not be applied "with a dogmatic vengeance." * * *.

*Id.* at ¶ 26-27; *Accord State v. Burrows*, 2d Dist. Montgomery No. 25918, 2014-Ohio-3164, ¶ 14.

**{¶ 101}** "In light of the myriad procedural protections granted defendants in modern criminal practice, * * * 'the corpus delicti rule is supported by few practical or social policy considerations.' " *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988), quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), vacated on other grounds, *Edwards v. Ohio*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). Thus, while the corpus delicti rule requires the State to present some independent evidence of the criminal act and criminal agency, that burden is minimal. *Id.*; *State v. Barker*, 2d Dist. Montgomery No. 23691, 2010-Ohio-5744, ¶ 10.

{¶ 102} In this case, Jones contends the State failed to present any evidence establishing that any of the episodes of abuse took place when K.D. was under the age of ten.  We have already addressed this argument under Jones's Second and Third Assignments of Error, finding there was indeed sufficient evidence presented by the State establishing that Jones had engaged in sexual conduct with K.D. when she was under the age of ten.  Accordingly, Jones's corpus delicti argument lacks merit.

{¶ 103} Jones's Sixth Assignment of Error is overruled.


**Detective Dix's Testimony**

{¶ 104} Under his Seventh and Eighth Assignments of Error, Jones challenges the admissibility of certain portions of Detective Dix's trial testimony.  Specifically, Jones claims that Detective Dix's testimony contained improper expert opinions and hearsay. We again disagree with Jones's claims.

I.

{¶ 105} Under his Seventh Assignment of Error, Jones contends the trial court erred in allowing Detective Dix to provide expert testimony on various issues concerning child abuse when he was not certified as an expert.   The State, on the other hand, claims that Detective Dix did not testify as an expert, but rather, merely offered admissible lay witness opinions based on his training and experience in child abuse cases.  We agree with the State.

{¶ 106} Evid.R. 701 governs opinion testimony by lay witnesses and provides that such testimony "is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue." We note that "[a] trial court has considerable discretion in admitting the opinion testimony of lay witnesses." (Citation omitted.) *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 43 (2d Dist.).

**{¶ 107}** In *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001), the Supreme Court of Ohio explained that pursuant to Evid.R. 701:

> [C]ourts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. * * * Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience.

(Footnote omitted.) *Id.* at 296-297.

**{¶ 108}** "It is well-settled that a police officer may testify concerning matters that are within his experience and observations that may aid the trier of fact in understanding the other testimony pursuant to Evid.R. 701." *State v. Tatum*, 10th Dist. Franklin No. 10AP-626, 2011-Ohio-907, ¶ 17. For example, in *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, we held that an officer's testimony opining that injuries to a domestic violence victim were defensive wounds was admissible lay witness testimony given the fact that it was based on the officer's personal observation of the victim, training

as a police officer regarding defensive wounds, and his common understanding of how bruises, abrasions, and rashes appear. *Id.* at ¶ 76-77. Similarly, in *State v. Parker*, 2d Dist. Montgomery No. 18926, 2002-Ohio-3920, we held that pursuant to Evid.R. 701, a detective was permitted to testify that two wounds on the defendant were consistent with gunshot wounds based upon the detective's 22 years of experience on the police force, experience with victims of gunshot wounds, and familiarity with different types of gunshot wounds. *Id.* at ¶ 53.

**{¶ 109}** More similar to the facts of this case, in *State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, a detective who investigated the rape of a minor testified that the victim was "scared to death" during the forensic interview and that the victim's demeanor was not unusual when compared with other child victims who have alleged sexual abuse. *Id.* at ¶ 13-14. We held that the detective's testimony was properly admitted under Evid.R. 701 because the detective's opinion was rationally based on his personal observation of the child during the interview, his experience as a police officer in interviewing 25 to 50 other child sex abuse victims, and being familiar with the common behavioral characteristics of the victims. *Id.* at ¶ 14.

**{¶ 110}** Here, Jones takes issue with Detective Dix testifying that based on his experience: (1) it is common for children to delay in reporting sexual abuse; (2) children have difficulty relating the occurrence of certain events to the actual time in which the event occurred; and (3) children tend to psychologically deal with multiple instances of abuse by blending events together, which renders them unable to remember exactly what

happened during each event.[1]

{¶ 111} We find the foregoing testimony was well within Detective Dix's personal knowledge and experience, as he testified to having 17 years of police experience and being a lead detective for the Special Victim's Unit for 13 of those years. Detective Dix also testified that he was assigned to work with CARE House, Montgomery County's advocacy center for child abuse victims, for seven to eight years and has conducted over 500 interviews of children. In addition, Detective Dix testified that he received child forensic interview training for CARE House through the University of Cincinnati's psychiatry department. Therefore, we conclude that Detective Dix's testimony regarding delayed disclosures, children having difficulty with the timing of events, and children blending multiple instances of abuse was permissible under Evid.R. 701. In so holding, we note that Detective Dix's testimony was rationally based on his training and personal experience in child abuse cases, and aided the trier of fact in determining K.D.'s credibility since her disclosure of the abuse was delayed and she had some difficulty with the timing of her abuse. Accordingly, the trial court did not abuse its discretion in permitting this testimony.

{¶ 112} Jones also takes issue with Detective Dix testifying that Dr. Vavul-Roediger is a leading child abuse specialist. According to Jones, Detective Dix's opinion improperly vouched for Dr. Vavul-Roediger's credibility. Jones further takes issue with Detective Dix's testimony explaining that if any abuse has not occurred within 72 hours

---

[1] In his appellate brief, Jones characterized Detective Dix's testimony on "blending" as an opinion on how children have a tendency to forget about some episodes of abuse and "mistake them as abuse at the hands of another." However, the record indicates that Detective Dix never testified that the concept of "blending" included a child mistaking his or her abuser. *See* Trial Trans. Vol. II (May 28, 2014), p. 271.

of presenting a child to the emergency room at Children's Hospital, a full medical exam will not be done there, but at a later time by Dr. Vavul-Roediger. Unlike the previously discussed testimony, Jones's trial counsel never raised an objection to either of these comments at trial, thus waiving all but plain error.

{¶ 113} Plain error exists when there is error, the error is an obvious defect in the proceedings, and the error affects substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. A court recognizes plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 114} Detective Dix's testimony as to Dr. Vavul-Roediger's status as a leading child abuse specialist did not amount to plain error, as the resulting prejudice was minimal and the outcome of trial would not have been different had Detective Dix not made such a claim. As for his comment about Children's Hospital, Detective Dix testified that the hospital and CARE House are collaborative in that the hospital provides all of the medical treatment that is provided by CARE House. Therefore, based on his seven to eight years of experience working for CARE House, it is fair to say that Detective Dix would be familiar with the hospital's protocol when a victim of child abuse is presented to the emergency room. Therefore, his testimony was permissible under Evid.R. 701 because it was within his own personal knowledge and experience and it aided the jury in understanding why K.D. was not examined when she went to the emergency room. Accordingly, we find no error, let alone plain error, in allowing Detective Dix's testimony.

{¶ 115} For the foregoing reasons, Jones's Seventh Assignment of Error is overruled.

II.

{¶ 116} Under his Eighth Assignment of Error, Jones contends a portion of Detective Dix's testimony was improper because it constituted hearsay, violated his rights under the Confrontation Clause, expressed Detective Dix's personal opinion on the ultimate issue of whether K.D. was abused, and conveyed an unqualified expert opinion. The testimony Jones challenges is as follows:

Because of my experience with children, I have found that they have [a] very difficult time in faceting events with actual time. So what we have to do is that we have to use other means to try to establish a time line of when these events actually occurred. For an example, in this case, the victim was citing that certain things had occurred—

* * *

The victim was able to describe certain events and where certain events had occurred. Knowing that they have difficulty relating that to actual factual time, I had to go backwards through the parents and through other resources to determine * * * where the events took place and when they coincided with her life history. So where certain portions of some— well, where certain somebody had lived during certain times that this had occurred, where the events had taken place and did they match up with the time line of when somebody lived in an area, when they moved out, when they came back.

So in this particular case, I had to use the mother and I had to use other family members along with the Defendant's statements to determine * * * when this actually took place.

Trial Trans. Vol. II (May 28, 2014), p. 269-270.

**{¶ 117}** Jones first claims that Detective Dix's testimony constitutes hearsay and violated his rights under the Confrontation Clause. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "When the prosecution offers hearsay evidence against the accused in a criminal case, it prompts the court to question whether admission of that evidence would violate the Confrontation Clause." *State v. Allen*, 8th Dist. Cuyahoga No. 82556, 2004-Ohio-3111, ¶ 15, citing *Tennessee v. Street*, 471 U.S. 409, 413-14, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

**{¶ 118}** The testimony at issue is not hearsay because it does not convey a statement made by another. Detective Dix testified that K.D. was "able to describe certain events and where certain events occurred." Trial Trans. Vol. II at 270. However, he never testified to what K.D. told him when she was describing those events and locations. Detective Dix also testified that he "had to go backwards through the parents and through other resources to determine * * * where the events took place and when they coincided with her life history." *Id.* But again, Detective Dix never testified to what the parents or other resources had told him. Instead, he merely indicated that he had to use their statements to help him determine when the abuse took place. Because the testimony at issue did not convey a statement made by another, it does not constitute hearsay and does not implicate the Confrontation Clause.

{¶ 119} Next, Jones claims that Detective Dix's testimony was improper because it expressed his personal opinion on the ultimate issue of whether K.D. was abused. We fail to see how the testimony Jones complains of expressed such an opinion. Detective Dix's testimony simply explained the steps he took to investigate K.D.'s accusations and to form a chronology of events in light of the fact that children K.D.'s age have difficulty in relaying the timing of events. Detective Dix never testified that he believed K.D. was sexually abused as Jones now suggests. Jones's argument to the contrary lacks merit.

{¶ 120} Lastly, Jones claims that Detective Dix's testimony was improper because it amounted to an expert opinion. We have already addressed this argument under Jones's Seventh Assignment of Error and overruled it on grounds that Detective Dix's testimony is permissible under Evid.R. 701. Therefore, Jones's final argument also lacks merit.

{¶ 121} For the foregoing reasons, Jones's Eighth Assignment of Error is overruled.

**Amendment to Indictment**

{¶ 122} Under his Twelfth Assignment of Error, Jones contends the trial court erred in allowing the State to amend Count Four of the indictment at the close of trial. Originally, Count Four charged Jones with gross sexual imposition, i.e., having "sexual contact with another, not his/her spouse, less than thirteen (13) years of age, whether or not the offender knew the age of such person and with the purpose of sexually arousing or gratifying himself or the victim, *to-wit: hand—buttock*[.]" (Emphasis added.) Indictment (Apr. 29, 2013), Montgomery County Court of Common Pleas Case No. 2013-

CR-01240, Docket No. 1, p. 2. However, after resting its case, the State moved to amend Count Four to also include sexual contact to K.D.'s "genital, or pubic region," since K.D. testified at trial that Jones had touched her vaginal area under her clothes with his hand and not her buttocks.

{¶ 123} Jones concedes that Crim.R. 7(D) permits an indictment to be amended with respect to any variance with the evidence as long as the amendment makes no change in the name or identity of the crime charged. Specifically, Crim.R.7(D) provides, in relevant part, that:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

{¶ 124} "Crim.R. 7(D) embodies the protections guaranteed in Section 10, Article I, of the Ohio Constitution, which provides that 'no person shall be held to answer for a

capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury.' " *State v. Strozier*, 2d Dist. Montgomery No. 14021, 1994 WL 567470, *2 (Oct. 5, 1994). "This provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." (Citations omitted.) *State v. Headley*, 6 Ohio St.3d 475, 478-479, 453 N.E.2d 716 (1983).

{¶ 125} "Crim.R. 7(D) does not permit the amendment of an indictment when the amendment changes the penalty or degree of the charged offense, because such a change alters the identi[t]y of the offense." *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 1. Whether an amendment changes the name or identity of the offense charged is a matter of law that we review de novo. *State v. Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 22. "If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment." (Citations omitted.) *Id.* at ¶ 23. An abuse of discretion occurs when the decision of a court is "unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 126} "Amending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the rape offense."

(Citations omitted.) *State v. Westerfield*, 10th Dist. Franklin No. 07AP-1072, 2008-Ohio-4458, ¶ 17. "For amendments that do not change the name or identity of the offense charged, the defendant is entitled to a continuance ' "unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." ' " *State v. Honeycutt,* 2d Dist. Montgomery No. 19004, 2002 WL 1438648, *3 (July 5, 2002), quoting *Strozier* at *2, quoting Crim.R. 7(D).

{¶ 127} In *Westerfield*, a defendant was indicted for two counts of raping a minor, one for vaginal intercourse and the other for digital anal intercourse. *Id.* at ¶ 2. Initially, the eight-year-old victim told a hospital social worker that the defendant had inserted his finger into her buttocks, but at trial, the victim testified that the defendant had inserted his finger into her vagina. *Id.* at ¶ 7 and 9. As a result, the State moved to amend the rape count alleging digital anal intercourse to include digital vaginal intercourse as well. *Id.* at ¶ 10. The defense objected, but did not request the jury to be discharged. *Id.* The trial court allowed the amendment, and at the conclusion of trial, the jury found the defendant guilty of the rape count alleging digital penetration. *Id.* at ¶ 10-11. On appeal, the Tenth District found the amendment proper because "no change was made in the name or identity of the crime charged." *Id.* at ¶ 17. Additionally, the court found no prejudice as a result of the State's amendment. *Id.* at 18-21.

{¶ 128} Jones contends the trial court erred in permitting the State to amend the gross sexual imposition charge at issue because it resulted in him being convicted of a charge essentially different from that returned by the grand jury. We disagree.

{¶ 129} The present case is analogous to *Westerfield* in that the State's

amendment to the gross sexual imposition count did not change the name or identity of the charge, but merely amended the type of "sexual contact" on which the charge was based. "[S]exual contact" includes "any touching of an erogenous zone of another, including without limitation the thigh, *genitals*, buttock, *pubic region*, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person[.]" (Emphasis added.) R.C. 2907.01(B). As previously noted, the State moved to amend the gross sexual imposition charge under Count Four of the indictment to include the "genital or pubic region" as areas Jones touched on K.D.'s body. The amendment did not change the penalty or degree of the offense. Furthermore, the State was still required to prove, and did in fact prove, that Jones had "sexual contact" with K.D. Since the amendment conforms to the evidence adduced at trial regarding Jones touching K.D. on her vaginal area as opposed to her buttocks, the trial court did not abuse its discretion in allowing the State to amend the indictment in respect to the variance with the evidence.

{¶ 130} We also note that while Jones was entitled to move for a discharge of the jury and to request a reasonable continuance as a result of the amendment, he did neither. In the past, we have declined to consider a defendant's entitlement to a continuance under Crim.R. 7(D) when one is not requested. *See Honeycutt,* 2d Dist. Montgomery No. 19004, 2002 WL 1438648, at *3; *State v. Weber*, 2d Dist. Montgomery No. 25508, 2013-Ohio-3172, ¶ 29. Regardless, even if Jones had made such a request, it would have been properly denied, as the record indicates that he did not successfully demonstrate that he was misled or prejudiced by the "variance in respect to which the amendment [was] made." *See* Crim.R. 7(D).

{¶ 131} For the foregoing reasons, Jones's Twelfth Assignment of Error is

overruled.

## Conclusion

{¶ 132} Having overruled all twelve assignments of error raised by Jones, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Kirsten A. Brandt
Brock A. Schoenlein
Hon. Barbara P. Gorman