OPINION
{¶ 1} Defendant, Flavio Jiminez, appeals from his convictions for aggravated burglary, abduction, rape and attempted rape, and sentences totaling seven years imposed for those offenses pursuant to law.
 {¶ 2} Jiminez was arrested by West Carrollton police on *Page 2 
November 4, 2005, following their response to a 911 call. After officers decided that Jiminez is conversant only in Spanish,[1] an officer familiar with Spanish read Jiminez his Miranda rights, in Spanish, from a form in a book titled, "Speedy Spanish For Police Personnel." Jiminez indicated that he understood the rights that were read to him and agreed to be interviewed.
 {¶ 3} Jiminez was transported to police headquarters, but his interview was problematic because no officer fluent in Spanish was available. Eventually, an officer used a computer program to translate his questions into Spanish and Jiminez's responses into English. Both questions and answers were in written form. In the course of the interview, Jiminez confirmed that he had been advised of hisMiranda rights and understood them.
 {¶ 4} At no time did Jiminez ask to terminate the interview, invoke his right to remain silent, or ask for an attorney. Jiminez did not appear to be intoxicated or disoriented, and he responded appropriately to the questions he was asked. Neither did he indicate any misunderstanding of those questions. *Page 3 
 {¶ 5} Jiminez was indicted on one count of aggravated burglary, R.C.2911.11(A)(2), one count of abduction, R.C. 2905.02(A), two counts of rape, R.C. 2907.02(A)(2), and one count of attempted rape, R.C.2923.02(A), 2907.02(A)(2). Jiminez filed a Crim.R. 12(C)(3) motion to suppress evidence of the statements he made during his police interview, arguing that he had not knowingly, intelligently and voluntarily waived his Miranda rights due to his inability to understand English and the police officer who read him his rights in Spanish.
 {¶ 6} Following a hearing, the trial court overruled Jiminez's motion to suppress. Defendant filed other pretrial motions, including a request for a hearing to determine the victim's competency to testify, a request for disclosure of the victim's medical records, and a request to reopen and/or reconsider the court's decision denying his motion to suppress evidence of his statements. The trial court overruled all of those motions.
 {¶ 7} Defendant Jiminez subsequently entered no contest pleas to all of the charges against him and was found guilty. The trial court sentenced Defendant to concurrent prison terms totaling seven years and classified him as an aggravated sexually oriented offender. *Page 4 
 {¶ 8} Defendant timely appealed from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BECAUSE THE DEFENDANT-APPELLANT DID NOT INTELLIGENTLY AND VOLUNTARILY WAIVE HIS MIRANDA RIGHTS."
 {¶ 10} In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, the United States Supreme Court held:
 {¶ 11} "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.
 {¶ 12} "* * *
 {¶ 13} "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Id., at 444.
 {¶ 14} In order to be effective, a waiver of Miranda rights *Page 5 
must have been made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon those rights and the protections against self-incrimination they afford. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.Moran v. Burbine (1986), 475 U.S. 412, 421, 106 S.Ct. 1135,89 L.Ed.2d 410.
 {¶ 15} Defendant does not contend that his expressed waiver of hisMiranda rights was coerced. Neither does he contend that the Spanish language translation of the Miranda warning from "Speedy Spanish For Police Personnel" that was read to him is itself incorrect or incomplete. Rather, Defendant contends that his expressed waiver of hisMiranda rights was not made with a full awareness of those rights and the consequences of waiving them because the officer who read those rights to Defendant was not understandable to Defendant.
 {¶ 16} Defendant offered the testimony of a witness who is fluent in both English and Spanish and who, after hearing the officer who had read the Miranda warning to Defendant read the warning again at the hearing on Defendant's motion to suppress, testified that the officer's recitation was heavily *Page 6 
accented. The witness also could not recall whether the officer had read the complete array of rights that the Spanish-language translation the officer used includes, as the witness heard the officer speak them.
 {¶ 17} The witness did not testify that the officer was not understandable in Spanish. Her recollection of the rights she heard the officer recite at the hearing does not demonstrate that his recitation of the rights to Defendant when he was arrested was incomplete. The card from which he read contains a complete statement of the Miranda warnings in Spanish, and the officer testified that he read the entire contents of the card to Defendant, who stated that he understood what the officer told him.
 {¶ 18} Defendant devotes considerable discussion to the difficulties in translations that were experienced during his subsequent interview. That was due to the interviewing officer's difficulty in translating his questions from English to Spanish. It does not demonstrate that Defendant did not understand the Spanish-language translation of theMiranda rights that was read to him when he was arrested, and there is no contention that the translation of those rights he was read was incorrect or incomplete.
 {¶ 19} The officer who read the Miranda rights to Defendant *Page 7 
in a Spanish-language translation testified that he read those rights to Jiminez and that Defendant indicated that he understood the rights and agreed to be interviewed. The agreement constitutes a waiver. Defendant asked for no more specific explanation. Neither did he invoke his rights during the course of the interview. Indeed, in the course of the interview Defendant confirmed that the rights had been read to him.
 {¶ 20} On the totality of the circumstances, the record supports the trial court's finding that Defendant was aware of the rights he waived and the consequences of his waiver. The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 21} "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR COMPETENCY HEARING OF THE ALLEGED VICTIM."
 {¶ 22} Evid.R. 601 provides:
 {¶ 23} "Every person is competent to be a witness except:
 {¶ 24} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 25} The general policy expressed by Evid.R. 601 is that *Page 8 
all persons are competent to testify unless specifically found incompetent. Weissenberger, Ohio Evidence Treatise (2006), § 601.1. Even persons of unsound mind are competent to testify if they are able to correctly state matters which have come within their perception with respect to the issues involved and they are able to appreciate and understand the nature and obligation of an oath. State v. Bradley
(1989), 42 Ohio St.3d 136, 140-141, quoting State v. Wildman (1945), 145 Ohio St. 379.
 {¶ 26} Where a person is neither adjudicated mentally ill nor committed at the time of testifying, the witness is presumed competent to testify, and the burden of proving incompetency rests with the party challenging the witness. Weissenberger, at § 601.3. The person asserting the incompetency must demonstrate not only the existence of the mental disease or defect, but also that the condition is of such an extensive nature that it renders the witness unable to understand facts or relate them truthfully, or to comprehend the nature and obligation of an oath.Id.
 {¶ 27} Whether a witness is incompetent is a matter resting within the trial court's sound discretion, and the court's decision will not be disturbed on appeal absent an abuse of discretion. Bradley. An abuse of discretion means more than *Page 9 
a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court.State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 28} Defendant asked for a hearing to determine the victim's competence to testify, relying on police reports Defendant received in discovery indicating that the victim had been diagnosed as suffering from a bipolar disorder and an alcohol problem. However, Defendant failed to show how those conditions, if they exist, are of such an extensive nature as to render a person who suffers from them unable to understand facts or relate them truthfully, or to comprehend the nature and obligation of an oath. State v. Bradley. Therefore, the trial court did not abuse its discretion when it denied Defendant's motion to determine whether the victim of his alleged offenses is competent to testify.
 {¶ 29} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 30} "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANT'S MOTION DISCOVERY."
 {¶ 31} Defendant moved to compel discovery of the victim's medical records, materials he argues he needed in order to challenge the victim's competency. The trial court denied the motion. On appeal, Defendant argues that the ruling violates *Page 10 
the rule of Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215.
 {¶ 32} Brady holds that suppression by the prosecution of evidence favorable to the accused upon his request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S., at 86. The requirement is imposed on the prosecutor as an affirmative duty when a defendant requests discovery. Crim.R. 16(B)(1)(f).
 {¶ 33} Unless they contain reports of tests or examinations made in connection with the case, Crim.R. 16(B)(1)(d), the medical records of a state's witness are not among the materials the prosecutor has a duty to provide in discovery. Neither are they discoverable pursuant to Mont. Loc.R. 3.03. Furthermore, a person's medical records are generally protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), 45 C.F.R. § 164.
 {¶ 34} The fact that a defendant wishes to have materials that may or may not exist, and may or may not be in the prosecutor's custody or control, does not demonstrate that such articles are Brady materials that the prosecutor has a duty to disclose. Defendant's contention that the trial court's ruling created a Brady violation is no more than boot-strapping, *Page 11 
based on a suggestion which is wholly speculative concerning what the victim's medical records might show. No abuse of discretion is demonstrated.
 {¶ 35} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 36} "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANT'S APPLICATION TO RE-OPEN EVIDENCE AND RECONSIDER THE COURT'S RULING ON THE MOTION TO SUPPRESS."
 {¶ 37} Following the trial court's denial of his Crim.R. 12(C)(1) motion to suppress evidence for a Miranda violation, Defendant renewed his motion on different grounds. In his brief on appeal, Defendant summarizes that contention as whether, "given his background, ethnicity, and lack of experience, [Defendant] can even know what a right is, let alone knowingly and voluntarily waive the same." (pp. 12-13). Defendant relies on the holding of the Montgomery County Court of Common Pleas inState v. Maddex, Case No. 02-CR-2789, for authority.
 {¶ 38} We note that the defendant in Maddex suffered from a form of mental retardation which the court found caused him to be unable to understand the waiver of Miranda rights he signed. Defendant Jiminez does not allege a cognitive dysfunction of that kind. He instead contends that the rights *Page 12 
the Miranda warnings concern are so outside his cultural experience that he could not knowingly and intelligently waive them.
 {¶ 39} The Miranda rights are objective propositions stated in a simple declarative form. Absent some defect of competency, an adult individual is presumed to be able to understand them, and if he does not, to have the capacity to at least ask for an explanation.
 {¶ 40} It may be that some cultures outside the West are so foreign to ours that a person coming from one of them could find theMiranda warnings incomprehensible. However, we cannot reasonably conclude that our neighboring nation of Mexico is among those cultures, or that an adult native of Mexico who has emigrated to the United States is unable to comprehend the Miranda warnings when they are explained to him in Spanish. Therefore, we cannot find that the trial court abused its discretion when it denied Defendant's request to suppress his statements to police on those grounds
 {¶ 41} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. And DONOVAN, J., concur.
[1] It appears from the record that Jiminez may also be conversant in English, to some extent, but if so, that fact has no bearing on the issues presented. *Page 1