[Cite as *State v. Heisey*, 2015-Ohio-4610.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2014-CA-34 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 14-CR-42 |
| v. | : | |
| | : | (Criminal Appeal from |
| MARK D. HEISEY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 6th day of November, 2015.

. . . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Miami County Prosecutor's Office
201 West Main Street – Safety Building, Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, and LARRY J. DENNY, Atty. Reg.
No. 0020430, 371 West First Street, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Mark Heisey appeals from his convictions for rape. Finding no error, we

affirm.

## I. Background

{¶ 2} In early January 2014, the Miami County Sheriff's Office received a call from a 24-year-old woman who claimed that she had been sexually abused when she was a child. Detective Steven Hickey and Detective Todd Cooper interviewed the woman. She told them that when she was a child she lived with Heisey and that he had abused her repeatedly. The detectives then went to talk to Heisey at his house. While sitting in one of the detective's cars in his driveway, Heisey admitted that the sexual abuse allegations were true.

{¶ 3} In late January, Heisey was indicted on three counts of rape under R.C. 2907.02(A)(1)(b) (under 13 years of age). The indictment, as later amended, alleges three different types of abuse that occurred between March 31, 1999, when the victim turned 10 years old, and March 31, 2002, when she turned 13. Heisey moved to suppress his confession to the detectives, arguing that it was given involuntarily. At a suppression hearing, the detectives testified and a recording of their interview with Heisey was admitted into evidence. Heisey did not testify. After the hearing, the trial court overruled the suppression motion. Heisey later filed several other motions—to compel the disclosure of *Brady* material, for an in camera review of the grand jury testimony, to dismiss the indictments, and for a *Daubert* hearing on one of the state's expert witnesses. The trial court overruled each of these motions.

{¶ 4} Ultimately, Heisey pleaded no contest to the three rape counts and was sentenced to a total of 10 years in prison.

{¶ 5} Heisey appealed.

## II. Analysis

{¶ 6} Heisey assigns five errors to the trial court. The first assignment of error challenges the overruling of his motion to suppress. The second challenges the overruling of his motion to dismiss the indictment. The third challenges the overruling of his motion to compel disclosure of *Brady* material. The fourth challenges the overruling of his motion for an in camera viewing of the grand jury proceedings. And the fifth assignment of error challenges the overruling of his motion for a *Daubert* hearing on one of the state's expert witnesses.

## A. The motion to suppress

{¶ 7} The first assignment of error alleges that the trial court erred by overruling Heisey's motion to suppress his confession, claiming that the statements were involuntary. Specifically, Heisey claims that the interviewing detective used scare tactics, misrepresentations, and promises of leniency to create an environment conducive to confession and to overcome his will. Heisey says that the detective ignored his request to end the questioning. He also says that the detective made threats and promises. Appellant's brief claims that Heisey is a person of less-than-average social sophistication and that he had never dealt with police before that day. The detective, says Heisey, made no attempt to discover the true nature of his irregularities before questioning him. Finally, Heisey says that the detective misrepresented the quality of the evidence that existed at the time of questioning.

{¶ 8} "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate

the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "The voluntariness of a confession is a question of law that an appellate court reviews de novo." *State v. Stringham*, 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100, ¶ 11, citing *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶ 9} The Due Process Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution "guarantee that no person in any criminal case shall be compelled to be a witness against himself." *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 19. A suspect may, however, waive this right against self-incrimination. *Id.* at ¶ 20. But the waiver must be done voluntarily. *Id.* "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." (Citations omitted.) *Id.* Thus "[t]he Due Process Clause requires an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession." *Stringham* at ¶ 10, citing *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (saying that "whether a confession is voluntary and whether a suspect has been subjected to custodial interrogation so as to require *Miranda* warnings are analytically separate

issues").

{¶ 10} The due-process test considers "the totality of the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation." *Id.* "Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements." (Citation omitted.) *Jackson* at ¶ 21.

{¶ 11} Here, the trial court found that before asking Heisey any questions, the interviewing detective read him his *Miranda* rights and Heisey acknowledged that he understood each right. With little encouragement, Heisey admitted that he had sex with the victim. He was reluctant to provide specifics. But after the detective suggested that it was in his interest to tell them exactly what happened, Heisey told them more specifically what he did with the victim. The trial court found that Heisey never expressed a wish to talk to an attorney or end the interview. At no time during the interview, found the court, did the detectives promise Heisey anything, like leniency, probation, or avoiding jail. Nor did the detectives tell Heisey that they had DNA or other physical evidence connecting him to the crime.

{¶ 12} The detectives recorded their interview with Heisey, and a copy of the audio recording was presented at the suppression hearing as an exhibit. The recording is in the record before us, and we have reviewed it. We agree with all of the trial court's findings. The interviewing detective never tried to scare Heisey, never threatened him, never misrepresented the evidence, never promised leniency. Heisey never indicated that he wanted an attorney or that he wanted to end the interview. Heisey's claims are a

mischaracterization of the record. *Compare State v. Jones*, 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, ¶ 20 (noting a similar mischaracterization of the record).

{¶ 13} The interviewing detective spoke calmly and respectfully to Heisey throughout the interview and never said anything unlawfully coercive. Contrary to what Heisey's claims suggest, it took very little prompting from the detective to get Heisey to talk. Most of the interview is a narrative by Heisey, explaining the situation leading up to and surrounding his criminal conduct with the victim.

{¶ 14} What prompting there was, was done calmly and was not improper. At the beginning of the interview and later, the detective told Heisey that his cooperation was important:

- "You can either chose to be cooperative with us * * *. Once we sit down and talk to people, we go to the prosecutor one of the main questions they're going ask us is, 'was he cooperative?' "

- "These are serious allegations. The max is high right now. When I go to the prosecutor they'll say how was he, was he cooperative? What did he say? I can make recommendations to the prosecutor. Remorse would be a factor. You're in a bad situation. Period. Its how you can make something good out of a bad situation, that's the seat you're in right now."

- "[Y]ou're in the position where you've done some inappropriate stuff, and we know what that inappropriate stuff is, but if you don't want to be cooperative with us, and get it out in the open, I'm going to go to the prosecutor and say, listen, he's not being cooperative, and its not going to go very well."

{¶ 15} Heisey contends that the detective is telling him that he could barter away his Fifth Amendment rights in exchange for leniency and that the detective is threatening him. But we have said that "assurances that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate a confession." *Stringham*, 2003-Ohio-1100, at ¶ 16. "[A] mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " (Citation omitted.) *Id.*, quoting *State v. Farley*, 2d Dist. Miami No.2002-CA-2, 2002-Ohio-6192. "Likewise, an investigator's offer to 'help' if a defendant confesses is not improper." *Id.*, citing *State v. Chase*, 55 Ohio St.2d 237, 247, 378 N.E.2d 1064 (1978). Here, the interviewing detective emphasized the importance of Heisey's cooperation. The detective suggested that the prosecutor would consider whether Heisey cooperated and that his cooperation may result in more lenient treatment. But the detective also told Heisey that he (the detective) did not make the sentencing decision and that he could not promise Heisey anything.

{¶ 16} Heisey also contends that the detective misrepresented the evidence that existed at the time. During the interview, the detective told Heisey: "[the victim] got it all out in the open. She told us that from 8 years old to 14 years old you committed sexual acts with her. Intercourse. Do I believe her? Absolutely. Past cases haven't made sense. This one does. We wouldn't be here if it didn't." According to Heisey, though, the case at the time of the interview "was at least one of, if not the weakest sexual assault case that

[the detective] had ever seen in his career." *Brief of Appellant*, 12. And Heisey says that during a recorded interview with detectives the victim was laughing at numerous points while explaining her allegations. But as the trial court found, and the state points out, there is no evidence of any of this. Heisey did not testify at the suppression hearing, and the recorded interview of the victim was never offered as evidence.

**{¶ 17}** At one point during the interview, Heisey says, "I am not a rapist. I never used force. I never hurt anyone." The detective responded by saying, "No one's hurt. You didn't hurt anyone." And later, when Heisey described the difficulty of not touching the victim, the detective commented, "Yeah, it'd be hard not to." Heisey says that these comments were inappropriate. But we have found "nothing unusual or improper" about a detective's attempt to empathize with a suspect by telling the suspect that he "understood why [the suspect] might have committed the crimes." (Citations omitted.) *State v. Strickland*, 2d Dist. Montgomery No. 25545, 2013-Ohio-2768, ¶ 15.

**{¶ 18}** Midway through the interview, the detective presses Heisey for specifics: "What inappropriate things did you do with her? Was it sex? Touching? I know what it was; I just want to hear it from you." Heisey hesitates: "I have concerns at this point. Before we carry this on any further, I'm really concerned about my wife in this cold weather. My wife is disabled. I've been cutting firewood for her. I can't go to this said level with you if I'm going to be hauled away, so that part doesn't matter." The detective then says to Heisey:

> You're looking at the short term. In our situation, you need to look long term.
> That's why we need to get to the specific details. Because the short term I
> can take care of for you. But the long term is huge. Whether you're going to

be cooperative with me and explain to me exactly what happened, I can ultimately, recommend, try to bring that long term down to a medium or shorter term.

Heisey contends that here he invoked his Fifth Amendment right, but the detective ignored it. Heisey also contends that the detective is telling him that he (the detective) controls Heisey's prison sentence. We disagree with both contentions. Heisey is not worried about incriminating himself; he's worried about his wife. And we do not think that the detective's statements promise leniency. Again, merely suggesting that cooperation may result in more lenient treatment is not misleading or unduly coercive. *Stringham*, 2003-Ohio-1100, at ¶ 16. And an offer to help a defendant if he confesses is not improper. *Id.*

{¶ 19} Lastly, Heisey contends that he is a person of below average social sophistication who had never before dealt with police. There is no evidence supporting either fact. And even if there were, these are only factors to consider. They do not by themselves render questioning unlawfully coercive.

{¶ 20} The totality of the circumstances here establishes that the questioning of Heisey was not unlawfully coercive. The recorded interview reveals no time when Heisey asked to stop the interview or when his free will was overborne. His entire conversation with the detective was voluntary and his confession was not the result of any threat or improper inducement. Therefore the trial court did not err by overruling Heisey's motion to suppress the statements that he made during the interview.

{¶ 21} The first assignment of error is overruled.

**B. The motion to dismiss the indictment**

**{¶ 22}** The second assignment of error alleges that the trial court erred by not dismissing the indictment, because it is unconstitutionally vague and fails to provide precise dates on which the alleged offenses occurred.

**{¶ 23}** A trial court's decision on a motion to dismiss an indictment is reviewed under an abuse-of-discretion standard. *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 E.3d 870, ¶ 7, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." (Citations omitted.) *Darmond* at ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 24}** The amended indictment alleges that the three statutory violations occurred during a three-year period. In his motion for a bill of particulars, Heisey asked for, among other information, the precise date and time of each violation. The state's bill of particulars lists three separate types of sexual abuse allegedly perpetrated on the victim, but does not state a specific date or time for any of the charges. The state explains that the victim described repeated sexual abuse by Heisey, so it is impossible for the victim to provide specific dates and times. Heisey moved to dismiss the indictment because it is

unconstitutionally vague and does not provide specifics of the alleged offenses. But the trial court concluded that the amended indictment and the bill of particulars provides Heisey with sufficient notice of the allegations against him and a fair opportunity to defend. Also, the court concluded that the indictment is not void due to vagueness.

{¶ 25} "[T]he precise date of the offense of rape is not an element of the crime, [so] a degree of inexactitude in averring the date of the offense is not necessarily fatal to a prosecution." *State v. Carey*, 2d Dist. Miami No. 2002-CA-70, 2003-Ohio-2684, ¶ 8, citing *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1987). Still, "when a defendant requests a bill of particulars, the State must supply a specific date for the alleged offense if it possesses such information." *Id.*, citing *Sellards*. "Even when the State does not possess a specific date for the offense, the lack of this information may be fatal to the prosecution if it creates a material detriment to the defendant's ability to defend himself." *Id.* But "where the inability to produce a specific time or date when the criminal conduct occurred is, as would be the more typical case, without material detriment to the preparation of a defense, the omission is without prejudice, and without constitutional consequence." *Sellards* at 172.

{¶ 26} "In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time." (Citation omitted.) *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist.1994). "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases

considering the circumstances." *State v. Robinette*, 5th Dist. Morrow No. CA-652, 1987 WL 7153, *3 (Feb. 27, 1987). Such is the case here. There is no evidence, as Heisey admits in his brief, that the state knew of any more specific dates for the offenses than those set out in the indictment. The state was simply unable to supply specific dates when these offenses occurred because it did not have that information.

{¶ 27} The state's inability to supply more specific dates and times did not result in material detriment to Heisey's ability to defend himself. Heisey does not show how he was prejudiced by the lack of specific dates. He claims that "there were multiple extended time periods wherein the Defendant was not present in the home (in which they both apparently resided), [the victim] was not present, or neither were present." *Brief of Appellant*, 18. But the failure to allege specific dates does not prejudice a defendant's ability to defend himself if the defendant claims, as Heisey does, that he never engaged in the alleged sexual conduct, regardless of the date or place that the victim alleged the abuse took place. *State v. Yaacov*, 8th Dist. Cuyahoga No. 86674, 2006-Ohio-5321, ¶ 24. As we have said:

> A defendant is not prejudiced by the failure of the indictment to specify the dates and times upon which the charged offenses allegedly occurred if such failure does not impose a material detriment to the preparation of his defense. Where the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error.

*Mundy* at 297, quoting *State v. Barnecut*, 44 Ohio App.3d 149, 542 N.E.2d 353 (5th Dist.1988), paragraph one of the syllabus. Heisey fails to show any material detriment to his ability to defend himself resulting from the inexactitude of the dates and times the offenses were committed. Therefore, the failure of the state to supply more specific dates did not deprive Heisey of a fair trial or due process of law.

{¶ 28} Lastly, Heisey contends that the indictment should have been dismissed because it violates the statute of limitations. In 1999, the statute of limitations for rape, R.C. 2901.13, was increased from 6 years to 20 years. Heisey contends that the retroactive application of the amendment violates the Retroactivity Clause of the Ohio Constitution. Heisey did not raise this issue in the trial court. Even if he had, his contention would have been rejected because Ohio courts have held that there is no Retroactivity Clause violation in cases like this. *E.g., State v. Dycus*, 10th Dist. Franklin No. 04AP-751, 2005-Ohio-3990, ¶ 16 ("Because the General Assembly expressly intended for R.C. 2901.13 to apply retroactively, and because the amendment is remedial, the retroactive application of the statute does not violate the Retroactivity Clause of the Ohio Constitution."). *See also State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 11 (concluding that the extension of the statute of limitations in R.C. 2901.13 is not an unconstitutional ex post facto law, because the extension is procedural, not substantive).

{¶ 29} The second assignment of error is overruled.

### C. The motion to compel disclosure

{¶ 30} The third assignment of error alleges that the trial court erred by overruling

Heisey's motion to compel disclosure of *Brady* material.

**{¶ 31}** The U.S. Supreme Court held in *Brady v. Maryland* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Thus "[t]he State has an affirmative duty to provide an accused, prior to trial, any evidence or other materials of which the State is aware that might exculpate the defendant from criminal liability." *State v. Pepper*, 2d Dist. Montgomery No. 19225, 2003-Ohio-3053, ¶ 28, citing *Brady*. But " '[t]he rights protected under *Brady v. Maryland*, *supra*, are not violated when a defendant in a criminal trial has full knowledge of the existence of the evidence prior to trial and makes no effort to obtain its production.' " *Wagster v. Overberg*, 560 F.2d 735, 741 (6th Cir.1977), quoting *Maglaya v. Buchkoe*, 515 F.2d 265, 268 (6th Cir.).

**{¶ 32}** Heisey moved the trial court for an order compelling the state to (1) obtain and disclose information regarding disbursements to the victim from a trust account; (2) review and document the victim and her grandmother's internet research on the issues of sentencing and statute of limitations for rape charges; (3) order Children Services to turn over all documentation of any false allegations of sexual abuse alleged by the victim since age 10; and (4) order the state to obtain the number of and names of, the victim's childhood pediatricians and gynecologists between the ages of 8 and 14. The court found no evidence in the record of any trust-account disbursements and no evidence of the alleged internet research. The court also found no evidence that the victim had ever made an allegation of sexual abuse in the past. The state, said the trial court, is not obligated

to conduct the defendant's investigation for him. We agree. Moreover there is no indication in the record that Appellant could not himself have obtained the information he asked the state to obtain for him from third parties.

{¶ 33} "The fact that a defendant wishes to have materials that may or may not exist, and may or may not be in the prosecutor's custody or control, does not demonstrate that such articles are *Brady* materials that the prosecutor has a duty to disclose." *State v. Jiminez*, 2d Dist. Montgomery No. 22082, 2008-Ohio-1601, ¶ 34. Heisey's contentions about a *Brady* violation are "wholly speculative" as to what the material sought may show. *Compare id.* (saying that the defendant's contention that the trial court's ruling created a *Brady* violation "is no more than boot-strapping, based on a suggestion which is wholly speculative concerning what the victim's medical records might show"). Therefore the trial court did not err by overruling Heisey's motion to compel disclosure.

{¶ 34} The third assignment of error is overruled.

### D. The motion to view grand jury proceedings

{¶ 35} The fourth assignment of error alleges that the trial court erred by denying Heisey's motion for an in camera viewing of the grand jury proceedings. "Disclosure of grand jury testimony, other than that of the defendant and co-defendant, is controlled by Crim.R. 6(E), * * * and the release of any such testimony for use prior to or during trial is within the discretion of the trial court." *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph one of the syllabus.

{¶ 36} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which

outweighs the need for secrecy." *Id.* at paragraph two of the syllabus. "Whether particularized need for disclosure of grand jury testimony is shown is a question of fact; but, generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Id.* at paragraph three of the syllabus.

{¶ 37} "A trial court does not abuse its discretion by finding no particularized need when a defendant speculates that grand jury testimony might have revealed contradictions." (Citation omitted.) *State v. Carr*, 2d Dist. Montgomery No. 22603, 2009-Ohio-1942, ¶ 41. *Accord State v. Mack*, 73 Ohio St.3d 502, 508, 653 N.E.2d 329 (1995) (saying that a trial court does not abuse its discretion by finding a defendant has not shown a particularized need "[w]hen a defendant 'speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination * * * by revealing contradictions' "), quoting *State v. Webb*, 70 Ohio St.3d 325, 337, 638 N.E.2d 1023 (1994). Here, Heisey cites only general contradictions that the grand-jury testimony might reveal. Such assertions do not establish the requisite need. We cannot say that the trial court abused its discretion by overruling Heisey's motion to view the grand-jury proceedings.

{¶ 38} The fourth assignment of error is overruled.

### E. The motion for a *Daubert* hearing

{¶ 39} The fifth assignment of error alleges that the trial court erred by overruling Heisey's motion for a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), concerning one of the state's

expert witnesses. We question whether the appellant has preserved this issue for appeal. A *Daubert* hearing is a prospective examination of the admissibility of expert opinion to determine whether the basis for the testimony is scientifically valid and reliable. As such, any ruling would be preliminary and anticipatory. Ordinarily a no contest plea does not preserve for review pretrial rulings on the admissibility of evidence. *State v. Engle*, 74 Ohio St.3d 525, 528–529, 660 N.E.2d 450 (1996) (Resnick, J., concurring)(a majority of the Justices joined in this opinion). Nevertheless, we have previously held that exclusion of expert testimony on a statutory basis, after a fully developed pre-trial evidentiary hearing, is preserved for appellate review upon a no contest plea where the ruling is the functional equivalent of a suppression hearing. *State v. Johnston*, 2d Dist., Montgomery No. 26016, 2015-Ohio-450, ¶23-26. *See also State v. Ulis*, 65 Ohio St.3d 83, 600 N.E.2d 1040 (1992) (trial court's ruling after "full-blown" hearing which was treated as a motion to suppress, with representations that the ruling was appealable upon a no contest plea, was preserved for appeal). Here however, there is no fully developed evidentiary hearing, no representation in the record that a no contest plea would preserve the trial court's ruling, and, because of the no contest plea, no trial context for us to evaluate. Accordingly, we conclude the *Daubert*-hearing argument has not been preserved for our review.

{¶ 40} Even if the issue was properly before us, we note that "[A] trial court's decision whether or not to hold a *Daubert* hearing is a matter within its sound discretion, and the court's decision is not to be overturned unless it abuses its discretion, i.e., the decision is arbitrary, unconscionable or unreasonable." (Citation omitted.) *State v. Shalash*, 2014-Ohio-2584, 13 N.E.3d 1202, ¶ 42 (12th Dist.). Heisey moved to exclude the testimony of clinical child psychologist Dr. Brenda Miceli and asked for a hearing on

the matter. Heisey asserts that he did not know what, exactly, Dr. Miceli's testimony would be, because the state had not told him. Heisey admits that Dr. Miceli is qualified to testify as an expert with respect to abused children. But the victim in this case is an adult, says Heisey. The trial court found that Heisey was aware of Dr. Miceli's testimony three to four months before, because the parties discussed it in front of the court. The court concluded that Heisey's motion stated no basis to exclude or limit Dr. Miceli's testimony. We agree.

**{¶ 41}** " 'T]he Ohio Supreme Court has found that testimony from a psychologist on the behavioral characteristics of sexually abused children is admissible, see *State v. Stowers* (1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881, and so have we. [*State v.Bell*, 176 Ohio App.3d 378, 2008–Ohio–2578, 891 N.E.2d 1280 (2d Dist.) ].' *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009–Ohio–1404, ¶ 41. 'What an expert may not do is offer a direct opinion on whether a child is telling the truth. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220.' *Id.*, ¶ 42." *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 30. In *Zimpfer*, as here, the victim was an adult at the time the abuse was reported although she was a minor during the abuse. Heisey does not dispute that Dr. Miceli is an expert with respect to children. We too have previously recognized her "extensive formal education and broad, deep experience with sexually abused children." *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013–Ohio–4941, ¶ 54. We see no abuse of discretion in the trial court's denial of a *Daubert* hearing given the circumstances in this record.

**{¶ 42}** The fifth assignment of error is overruled.

### III. Conclusion

**{¶ 43}** We have overruled each of the assignments of error presented. Therefore

the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Paul M. Watkins
Brock A. Schoenlein
Larry J. Denny
Hon. Jeannine N. Pratt
(successor to Judge Robert Lindeman)