[Cite as *State v. Boehme*, 2017-Ohio-8246.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27255 |
| | : | |
| v. | : | Trial Court Case No. 15-CR-1221 |
| | : | |
| JONATHAN C. BOEHME, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of October, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ENRIQUE G. RIVERA-CEREZO, Atty. Reg. No. 0085053, 61 N. Dixie Drive, Suite B, Vandalia, Ohio 45377
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, P.J.

**{¶ 1}** Jonathan Boehme appeals from his convictions for rape and gross sexual imposition. Finding no error, we affirm.

## I. Background

**{¶ 2}** In May 2015, Boehme was indicted on three counts of rape of a child under thirteen years of age, one count of attempted rape of a child under thirteen, and one count of gross sexual imposition. Boehme filed a number of pretrial motions, including one that asked the trial court to hold a *Daubert* Hearing regarding the testimony of child psychologist Dr. Brenda Joyce Miceli, who was expected to testify about the behavioral dynamics of child sexual abuse victims. The trial court overruled the motion.

**{¶ 3}** At the trial, "Jane"[1] testified that in the summer of 2012, when she was 11 years old, Boehme, her mother's boyfriend, moved into her home. Within a month, Jane said, Boehme began sexually molesting her. The first time happened early one morning before school while Jane was lying in bed. Boehme walked into her bedroom, and she thought that he was coming to get her clothes to put in the laundry. But Boehme got into her bed, pulled down her underwear, and pushed his fingers into her vagina. He stopped when Jane's younger brother knocked on her bedroom door, and then left the room.

**{¶ 4}** Jane testified that the abuse started happening two or three times a week, usually in the morning, usually in her bedroom, and often on Saturdays, when her mother was at work. She remembered one incident in particular that occurred in her mother's (and Boehme's) bedroom. Jane had been sick over night and was in her mother's bed sleeping. Her mother was sleeping in a recliner in the room (where she often slept

---

[1] We use this pseudonym for the victim to protect her identity.

because lying in bed hurt her back). Boehme was in the bed too. Jane did not think that he would "try anything" with her mother in the room. But she woke up to Boehme's fingers inside her underwear and inside the folds of her "private area." When Jane rolled over, he stopped. She described another incident when she was in the sixth grade. She was laying in her bed when Boehme came into her room and pushed a pillow against her face. He then removed the pillow and held her hands down as he stuck his penis in her mouth. Jane began crying and kicking, and Boehme got angry and left. She then went into the bathroom to throw up and brush her teeth. Jane also testified that, beginning in 2015, Boehme would hold her down or place a pillow over her face while he rubbed his penis between her upper thighs until he ejaculated. When he was done, he would use a towel to wipe off her legs.

{¶ 5} Finally, in March 2015, Jane told a friend of hers what was going on, and that friend encouraged Jane to tell her mother. Jane did so in a letter, and immediately after reading the letter, her mother kicked Boehme out of the house. A few days later, Jane walked to the Brookville Police Department and reported the abuse. Jane was soon interviewed at CARE House (an advocacy center for abused children) and examined at Dayton Children's Hospital.

{¶ 6} During the investigation, police collected the bedding from Jane's bed and sent it to the Miami Valley Regional Crime Laboratory for testing. A forensic scientist found five separate semen stains on the bed sheets. At trial, the scientist testified that, based on DNA testing, Boehme was the source of three of the stains. A DNA profile could not be obtained from one of the stains. And while the scientist could not be certain that Boehme was the source of the other stain, the stain's DNA profile is consistent with

Boehme's DNA.

{¶ 7} On Boehme's motion, the trial court acquitted him of attempted rape. The jury found him guilty on the remaining three counts of rape and one count of gross sexual imposition. Boehme was sentenced to three concurrent prison terms of 10 years to life and a consecutive 18-month term for gross sexual imposition.

{¶ 8} Boehme appealed.

## II. Analysis

{¶ 9} Boehme presents three assignments of error. The first challenges the trial court's overruling of his motion for a *Daubert* hearing. The second presents a manifest-weight-of-the-evidence challenge. And the third presents a claim for ineffective assistance of counsel.

### A. *The Daubert challenge*

{¶ 10} The first assignment of error alleges that the trial court erred by denying Boehme's request for a hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), concerning Dr. Miceli's prospective testimony.

{¶ 11} "A *Daubert* hearing is a prospective examination of the admissibility of expert opinion to determine whether the basis for the testimony is scientifically valid and reliable." *State v. Heisey,* 2015-Ohio-4610, 48 N.E.3d 157, ¶ 39 (2d Dist.). And " 'a trial court's decision whether or not to hold a *Daubert* hearing is a matter within its sound discretion, and the court's decision is not to be overturned unless it abuses its discretion.' " *Id.* at ¶ 40, quoting *State v. Shalash,* 2014-Ohio-2584, 13 N.E.3d 1202, ¶ 42 (12th Dist.).

{¶ 12} Boehme does not dispute that Dr. Miceli is an expert and that she may

testify about her clinical experience. But he says that a *Daubert* hearing should have been held so that he could challenge the research studies on which her expert opinions are based to determine whether the studies conform to established standards in the field of psychological study. And Boehme says that he should have had an opportunity to ask Dr. Miceli whether she has ever found that a victim's behavior does not correlate with sexual abuse.

{¶ 13} A challenge that the basis of Dr. Miceli's expert opinions is not scientifically valid and reliable is only speculation by Boehme. He gives no reason to think that any research study on which her opinions are based is so fundamentally flawed as to call into question her opinions on the behavioral characteristics of sexually abused children. Boehme had a court-appointed forensic psychologist to help him. If any study cited by Dr. Miceli was so flawed, Boehme could have challenged it during his cross-examination of her. Boehme could also have called his expert to refute her expert opinions. But he didn't.

{¶ 14} In *Heisey*, the defendant moved to exclude Dr. Miceli's testimony and asked for a *Daubert* hearing on the matter. While that defendant admitted that Dr. Miceli was qualified to testify as an expert with respect to abused children, he pointed out that the victim in that case was an adult. We agreed with the trial court that there was no basis to exclude or limit her testimony. We noted that we have "previously recognized her 'extensive formal education and broad, deep experience with sexually abused children,' " and we concluded that the trial court did not abuse its discretion by denying a *Daubert* hearing. *Heisey*, 2015-Ohio-4610, 48 N.E.3d 157, at ¶ 41, quoting *State v. Cox,* 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 54. Likewise, on the record here, we see nothing unreasonable about the trial court denying Boehme's request for a

*Daubert* hearing.

{¶ 15} The first assignment of error is overruled.

### B. *The manifest weight of the evidence*

{¶ 16} The second assignment of error alleges that the convictions are against the manifest weight of the evidence.

{¶ 17} When presented with a manifest-weight challenge, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "[w]hether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)*,* quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Boehme argues that the jury lost its way by finding Jane credible, based on discrepancies between her trial testimony and statements that she made during her CARE House interview.

{¶ 18} " 'A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony.' " *State v. Robinson,* 2d Dist. Montgomery No. 17393, 2001 WL 62569, *9 (Jan. 26, 2001), quoting *State v. McVay*, 10th Dist. Franklin No. 98AP-1246, 1999 WL 770950, *5 (Sept. 30, 1999); *State v. Royster,* 2d Dist. Montgomery No. 25870, 2015-Ohio-3608, ¶ 43 (quoting the same). A witness's credibility is a question primarily for the jury. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is because it is the jury who "is in the best position to determine the credibility of each witness by taking into account inconsistencies, as well as the witness' manner and demeanor." *State v. Pheanis,* 2d Dist.

Montgomery No. 26560, 2015-Ohio-5015, ¶ 36. For this reason, "we give substantial deference to a jury's decision whether, and to what extent, to believe a witness." *State v. Wayne*, 2d Dist. Montgomery No. 25243, 2013-Ohio-5060, ¶11. And we will not substitute our judgment for that of the jury "unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *State v. Harris*, 2d Dist. Montgomery No. 23562, 2010-Ohio-960, ¶ 9.

**{¶ 19}** Boehme cites three discrepancies between Jane's trial testimony and statements that she made during the CARE House interview. First, she testified at trial that the first time the abuse occurred was in her bedroom. On cross-examination, defense counsel played a recording of her interview in which she seems to be saying that the first time was in her mother's bedroom. Defense counsel asked her, "Is that a different time than you've described here today?" (Tr. 549). Jane explained that "yes, it is but it was not the first time. What I was talking about in that clip was not the first time." (*Id.*). She was adamant that the first incident with Boehme occurred in her bedroom, like she testified. Second, Jane testified at trial that the abuse happened on Saturdays and other weekdays. She said during the interview only that it happened every Saturday. Defense counsel said to her, "You didn't say it happened on Saturdays and other days. You said it happened on every Saturday morning for three years." (*Id.* at 547). Jane then explained, "Yes, but that—I was implying when I stated that that it happened on Saturdays. That doesn't mean that it just happened on Saturday. I never said that it just happened on Saturday." (*Id.*). So, the victim explained, the prior inconsistent statement may not be inconsistent at all. Third, Jane testified at trial that after Boehme ejaculated, he wiped off her leg. But during the CARE House interview, she seemed to say that she wiped off herself.

{¶ 20} " 'Credibility determinations on conflicting testimony are issues primarily reserved to the trier-of-fact to be second-guessed only in the most exceptional case.' " *Robinson* at *9, quoting *McVay* at *5. The problems with Jane's testimony cited by Boehme fall short of being clear contradictions, because it is not always entirely clear precisely what her interview answers refer to. Regardless, the discrepancies were explored on cross-examination, so the jury heard the problems and could weigh Jane's credibility accordingly. Also, the discrepancies do not directly concern the elements of the rape and gross-sexual-imposition offenses. That is to say, regardless where the first time occurred, how often it occurred, or who cleaned up, the evidence establishes at least three incidents of rape and one instance of gross sexual imposition. We do not think that the discrepancies make it patently apparent that the jury lost its way in arriving at the verdicts.

{¶ 21} Boehme also argues that the jury misused the semen-stain evidence. He says that that evidence cannot be considered for the rape offenses, because the bedding was given to Jane after the rapes were alleged to have occurred. The evidence shows that Jane was given the bed sheets as a Christmas gift in 2014, which was after she turned 13 years old. Jane testified that the rapes included in the date range of the indictment occurred when she was under 13. The semen stains, then, directly support her testimony that Boehme engaged in sexual activity in her bed when she was a minor, a fact that is strongly corroborative, and we believable admissible, in regard to the earlier sexual assaults. She also testified Boehme rubbed his penis on her upper thighs until he ejaculated, the basis of the gross-sexual-imposition charge, which she said was the sexual activity that began when she was 13. Boehme asserts that the jury improperly

used the semen-stain evidence to find him guilty of the rape charges too. Whether the jury misused the semen-stain evidence is purely speculative. There is no evidence in the record that supports this claim.

**{¶ 22}** The second assignment of error is overruled.

## C. *Ineffective assistance of counsel*

**{¶ 23}** The third assignment of error alleges that trial counsel was ineffective for not asking the trial court to sever the rape charges from the gross-sexual-imposition charge. He says that evidence that his semen was found on Jane's bed sheets was only relevant to the gross-sexual-imposition charge and would not have been admissible at a trial on just the rape charges. Boehme says that the semen-stain evidence prejudiced him because the jury could have improperly used it to find him guilty of the rape offenses too.

**{¶ 24}** "To establish ineffective assistance, [Boehme] must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Martin*, Ohio Sup. Ct. Slip Opinion No. 2017-Ohio-7556, ¶ 48, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

**{¶ 25}** "Under Crim.R. 8(A), joinder of offenses is proper where the offenses are 'based on the same act or transaction.' The law favors joining multiple criminal offenses in a single trial." (Citation omitted.) *State v. Coleman*, 85 Ohio St.3d 129, 136, 707 N.E.2d 476 (1999). But under Crim.R. 14, "[i]f it appears that a defendant * * * is prejudiced by a joinder," a trial court may grant a severance. "The defendant * * * bears the burden of

proving prejudice * * *." *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29, citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. Boehme does not contend that the offenses were improperly joined, and it is evident that the offenses are part of the same course of criminal conduct. His argument is that the gross-sexual-imposition offense should have been severed because of prejudice. Boehme says that the semen-stain evidence could properly be used only to find him guilty of gross sexual imposition but that the jury could have used it to find him guilty of rape.

{¶ 26} "A defendant normally cannot establish prejudice * * * where either (1) the evidence of each of the crimes joined at trial is simple and direct or (2) the State could have introduced evidence of one offense in a separate trial of the other offense had severance been granted." *State v. Ward,* 2d Dist. Montgomery No. 26773, 2016-Ohio-5354, ¶ 16, citing *State v. Franklin,* 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991); *see also Brinkley* at ¶ 30. The evidence presented at trial here to establish each of Boehme's offenses was simple and direct. Jane's testimony clearly delineates each offense. The first rape occurred when Boehme put his fingers inside her. The second rape occurred when he put his penis in her mouth. And the third rape occurred in her mother's bed when Boehme again put his fingers inside her. Only the first two rapes occurred in Jane's bed, and she did not suggest that Boehme ejaculated during either. She also testified that both rapes occurred when she was 11 or 12 years old. By contrast, it is clear from Jane's testimony that the event underlying the gross-sexual-imposition charge—Boehme rubbing his penis on her upper thighs—occurred in her bed when she was 13. And it is clear that he ejaculated—hence the semen stains found on her bed sheets. And as we

have already noted, nothing in the record suggests that the jury used the semen-stain evidence improperly. Because the evidence of each crime is simple and direct, we think that counsel's decision to not request severance was reasonable.

{¶ 27} Moreover, Boehme was not prejudiced by counsel's decision. Even if counsel had asked to sever the charges and the trial court had agreed and the court had excluded the semen-stain evidence from the rape trial, the jury almost surely would still have found him guilty of the three rape charges on the strength of Jane's and the other witnesses' testimony which was essentially uncontradicted.

{¶ 28} Boehme's ineffective-assistance argument lacks merit, as it fails to establish either deficient performance or prejudice.

{¶ 29} The third assignment of error is overruled.

### III. Conclusion

{¶ 30} We have overruled all of the assignments of error. The trial court's judgment is affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Enrique G. Rivera-Cerezo
Hon. Dennis J. Langer